**Dave MAGNUS, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 09–CO–1312, 10–CO–245.**

District of Columbia Court of Appeals.

Argued Nov. 10, 2010.

Decided Jan. 6, 2011.

---

28. *See Raskauskas v. Temple Realty Co.,* 589 A.2d 17, 22–24 (D.C.1991).

29. D.C.Code § 13–336(b)(8) (2001).

Gaillard T. Hunt, Silver Spring, MD, for appellant.

Peter S. Smith, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III and Margaret J. Chriss, Assistant United States Attorneys, were on the brief, for appellee.

Before REID and GLICKMAN, Associate Judges, and NEWMAN, Senior Judge.

GLICKMAN, Associate Judge:

In December 1996, appellant Dave Magnus entered unconditional pleas of guilty to charges of carrying a pistol without a license, possession of an unregistered firearm, and unlawful possession of ammunition. The charges were based on evidence that he possessed handguns and handgun ammunition in his home. Magnus was sentenced to a one-year term of probation, and he took no appeal. Eleven years later, however, in *District of Columbia v. Heller*,[1] the Supreme Court held that the District's general ban on possession of usable handguns in the home violated the Second Amendment. Magnus moved to set aside his convictions, arguing *inter alia* that in light of *Heller*, his guilty pleas were invalid because he was misinformed of what the government would have to prove in order to convict him, constitutionally, of the charged crimes. The trial court denied him relief, primarily on the ground that Magnus had waived his Second Amendment claims by pleading guilty.

On appeal, Magnus contends the trial court erred in denying his claims without a hearing. We agree. By voluntarily entering an unconditional guilty plea, a defendant waives non-jurisdictional defects in the proceedings leading up to the plea, including otherwise available constitutional defenses. Nonetheless, the defendant still may challenge the validity of the plea itself by showing that it was not voluntarily or intelligently made. While Magnus failed to raise such a challenge in a direct appeal of his convictions, he may be able to make the evidentiary showing required to overcome that procedural default and establish that he is entitled to relief to correct a miscarriage of justice, i.e., his conviction for conduct that under the Second Amendment could not be criminalized. We remand for an evidentiary hearing on these issues.[2]

1. 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

2. During the pendency of this appeal, the Supreme Court decided *Padilla v. Kentucky*, 559 U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). There the Court held that the Sixth Amendment guarantee of effective assistance of counsel obligates a criminal defense attorney to inform his non-citizen client whether a guilty plea would expose the client

## I.

On March 30, 1996, police executed a search warrant at a residence located at 814 Decatur Street, N.W. They discovered two loaded handguns in a room in the basement. Outside that room, elsewhere in the basement, the police found one pound of marijuana and $9,900 in cash. Magnus, who was present at the time of the search, admitted to possessing the weapons and was arrested. He later signed a typed confession (prepared by the police), in which he stated:

> I own both the .357 cal pistol and the .45 caliber semi-auto pistol found in my room. I bought both pistol [*sic*] on the street from two unknown people. The .357 I paid $150.00 for and the .45 cal pistol I paid $250.00 for. I bought them because I was robbed in front of my house (814 Decateur [*sic*] St. N.W.). I don't own or sell the marijuana found in 814 Decateur [*sic*] St. N.W. that belongs to Chris Ferguson who lives there but wasn't home. I rent a room from Chris's mother in 814 Decateur [*sic*] St. N.W. Washington D.C. If someone came to the house to rob the marijuana from Chris I would use my guns to protect the marijuana and Chris from being harmed.[3]

Magnus was charged by information with one count of carrying a pistol without a license (CPWL),[4] two counts of possession of an unregistered firearm (UF), two counts of unlawful possession of ammunition (UA), and one count of possession of marijuana with intent to distribute (PWID). On December 6, 1996, he pleaded guilty to each of the weapon and ammunition counts, and the government dismissed the PWID count. The court sentenced Magnus to concurrent one-year terms of probation on each count of conviction. Magnus did not appeal. He finished serving his sentence in early 1998.

There things stood until 2009, when Magnus petitioned for relief from his convictions, pursuant to either D.C.Code § 23–110 (2001) or a writ of error *coram nobis*, and moved to withdraw his guilty pleas, pursuant to Criminal Rule 32(e).[5] Relying on the Supreme Court's decision in *Heller* invalidating the District's handgun ban under the Second Amendment, Magnus argued that the CPWL, UF, and UA statutes were unconstitutional on their face and as applied to his possession of handguns and ammunition in his home for what he said was "legitimate self-defense."[6] He further argued that his guilty

to a risk of deportation. In addition to appealing the trial court's rulings on his *Heller* claims, Magnus asks us to grant him relief under *Padilla* because his counsel allegedly failed to warn him that his guilty pleas could lead to his deportation. However, as Magnus never presented this claim in the trial court, and as it finds no support in the existing record, we decline to consider it at this juncture. *See Gamble v. United States*, 901 A.2d 159, 171 (D.C.2006).

3. The Pretrial Services Agency representative who subsequently interviewed Magnus to assist the court in determining the conditions of his release reported that he admitted to "current use of marijuana," though he did not test positive for any drug use. The report also noted that Magnus had no prior convictions

or other pending cases in the District of Columbia.

4. It appears only one of the handguns was operable.

5. Super. Ct.Crim. R. 32(e).

6. Magnus claimed he had no prior felony convictions, mental health problems, or other disability that would have precluded him from registering a handgun under "any constitutionally legitimate scheme of [firearms] licensing or control." Additionally, he insisted, his sole reason for keeping a handgun in his home was to protect himself from criminal violence. In a related pleading, Magnus asked the court to "suppress" and disregard

pleas were unintelligent and involuntary because "no one, least of all defendant [Magnus], had any idea the Supreme Court would decide in [*Heller*] that the laws under which defendant was charged, pleaded, and was convicted were unconstitutional."

After hearing from the government, the trial court summarily denied Magnus's motions. Agreeing with the government's main objections, the court found Magnus ineligible for relief under D.C.Code § 23–110 because he was no longer in custody. The court refused to permit Magnus to withdraw his guilty plea pursuant to Criminal Rule 32(e) because, it held, he waived his Second Amendment claims by entering unconditional guilty pleas and therefore could not establish that withdrawal was necessary to correct a manifest injustice. Finally, the court denied Magnus's request for a writ of error *coram nobis* for three reasons: *first,* because he had waived his Second Amendment claims by pleading guilty; *second,* because he suffered no miscarriage of justice on account of that waiver, inasmuch as he "was arrested under circumstances indicating that he was using the firearms and ammunition to protect illegal drugs;"[7] and *third,* because "it cannot be said that the trial court made an error of fact when finding [Magnus's] plea a knowing and voluntary waiver of his rights under then controlling law," given that the Supreme Court had not yet decided *Heller* when Magnus pleaded guilty. Magnus timely appealed the denial of his motions to this court.[8]

## II.

When Magnus tendered his guilty pleas, the controlling view in this jurisdiction was that the Second Amendment does not guarantee an individual right and "affords [a defendant] no protection whatsoever" in a prosecution for possessing a handgun in violation of the District's CPWL, UF, and UA statutes.[9] The Supreme Court overturned those understandings in *District of Columbia v. Heller,*[10] holding that the Second Amendment protects an individual right to keep and bear arms for purposes of self-defense, and that the District's virtually absolute ban on handgun possession in the home violated the Second Amendment. Following *Heller,* this court in *Plummer v. United States*[11] held it impermissible under the Second Amendment to convict a defendant for possessing an unregistered handgun in the home when the District's unconstitutional ban made registration of a handgun

---

his post-arrest statement to police that he would use his guns to protect the marijuana belonging to Chris Ferguson. (Of course, by pleading guilty, Magnus relinquished his opportunity to move to suppress his statement for use as evidence against him, but he still could ask the court to discount it.) According to Magnus, that statement was the product of police overreaching and a material distortion of what he actually told the police, which was that he owned the guns "strictly for self-protection" and had no involvement with the marijuana.

7. The court stated, however, that it did not rely on anything Magnus allegedly told the police regarding the marijuana, and accordingly it denied Magnus's motion to "suppress" his statement, *see supra* note 6, as moot.

8. Because the trial court denied Magnus's motions in two separate orders, Magnus noted an appeal from each one. We consolidated the two appeals.

9. *Sandidge v. United States,* 520 A.2d 1057, 1058 (D.C.1987).

10. 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

11. 983 A.2d 323 (D.C.2009) (as amended on denial of rehearing and rehearing en banc, May 20, 2010).

impossible, unless the defendant was disqualified from registering the handgun for constitutionally permissible reasons. In *Herrington v. United States*,[12] we held that the Second Amendment similarly protects possession of handgun ammunition in the home, and that a UA prosecution for such conduct is unconstitutional unless the government proves the defendant was disqualified from exercising his Second Amendment rights. Because these decisions place certain conduct covered by the CPWL, UF, and UA statutes "beyond the power of the criminal law-making authority to proscribe,"[13] they apply retroactively to all criminal cases, including those in which the convictions have become final and unreviewable on direct appeal.[14] The reason for such retroactive application is that conviction "for an act that the law does not make criminal . . . inherently results in a complete miscarriage of justice and presents exceptional circumstances that justify collateral relief. . . ."[15]

▮▮▮ These principles of retroactivity are applicable whether the defendant was convicted after a trial or on a plea of guilty.[16] In the latter case, though, a collateral attack based on a defect inhering in the plea must be distinguished from an attack based on the deprivation of constitutional rights suffered by the defendant before the plea was entered. " 'It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.' "[17] By entering a guilty plea, a defendant "ordinarily waives all non-jurisdictional defects in the proceedings" leading up to the plea, including constitutional errors.[18] Consequently, a defendant cannot "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."[19] By choosing to plead guilty, therefore, Magnus waived his claims that the CPWL, UF, and UA statutes are unconstitutional on their face or as applied to his conduct.[20]

▮▮▮ A defect inhering in the plea is treated differently. Although a defendant who has pleaded guilty is foreclosed from challenging the constitutionality of his convictions directly, he still may "attack the voluntary and intelligent character of the

---

**12.** 6 A.3d 1237 (D.C.2010).

**13.** *Bousley v. United States*, 523 U.S. 614, 620, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (internal quotation marks and citations omitted).

**14.** *Schriro v. Summerlin*, 542 U.S. 348, 351–52, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004); *Bousley*, 523 U.S. at 620–21, 118 S.Ct. 1604.

**15.** *Davis v. United States*, 417 U.S. 333, 346–47, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) (internal quotation marks and brackets omitted).

**16.** *See Bousley*, 523 U.S. at 621, 118 S.Ct. 1604 ("[I]t would be inconsistent with the doctrinal underpinnings of habeas review to preclude petitioner from relying on our decision [limiting reach of federal criminal stat-

ute] in support of his claim that his guilty plea was constitutionally invalid.").

**17.** *Id.* (quoting *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984)).

**18.** *Collins v. United States*, 664 A.2d 1241, 1242 (D.C.1995) (per curiam); *accord Florida v. Nixon*, 543 U.S. 175, 187, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004) (citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)).

**19.** *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

**20.** *See Sims v. United States*, 963 A.2d 147, 149 (D.C.2008) (agreeing that Second Amendment challenge is not jurisdictional and there-

guilty plea" itself.[21] "A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.' "[22] For the plea to be intelligent, the defendant must have obtained " 'real notice of the true nature of the charge against him.' "[23] If, as in *Bousley*, the defendant is under the mistaken impression that non-criminal conduct is criminal because "neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged"—as those elements are clarified by later judicial decisions—then the defendant's guilty plea is unintelligent and "constitutionally invalid."[24] In other words, where a subsequent court ruling makes clear that the defendant's charged conduct was constitutionally protected and could not have been criminalized, a collateral challenge to the validity of the guilty plea is not foreclosed. Magnus presents just such a challenge, asserting he did not know when he pleaded guilty that (per the later decisions in *Heller*, *Plummer*, and *Herrington*) the CPWL, UF, and UA statutes constitutionally could not reach possession of handguns and handgun ammunition in the home for self-defense.

 To proceed on this claim, however, Magnus must surmount high procedural and substantive hurdles. Normally, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."[25] Having never sought direct review of his conviction, Magnus procedurally defaulted his current challenge.[26] To overcome that default and pursue his collateral attack, he must demonstrate either (1) "cause" and "actual prejudice," or (2) that he is "actually innocent."[27] These procedural requirements overlap with the basic substantive standard Magnus must satisfy to obtain the relief he seeks: under Criminal Rule 32(e), "[a] guilty plea may be withdrawn after sentencing only if the defendant affirmatively establishes that the trial court's acceptance of [his] plea was manifestly unjust, and that the plea proceeding was fundamentally flawed such that there was a complete miscarriage of justice."[28]

 On the current record, it remains an open question whether Magnus can carry his burden of proof to surmount the procedural default and establish his entitlement to relief. The trial court concluded that Magnus cannot demonstrate a miscarriage of justice because he "was arrested under circumstances indicating that

fore is subject to waiver by plea of guilty or otherwise).

21. *Tollett*, 411 U.S. at 267, 93 S.Ct. 1602; *see also Wallace v. United States*, 936 A.2d 757, 761 (D.C.2007).

22. *Bousley*, 523 U.S. at 618, 118 S.Ct. 1604 (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)).

23. *Id.* (quoting *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859 (1941)).

24. *Id.* at 618–19, 118 S.Ct. 1604. *Cf. United States v. Broce*, 488 U.S. 563, 573, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (holding that conscious waiver of each potential defense relinquished by a guilty plea is not required for the plea to be valid).

25. *Bousley*, 523 U.S. at 621, 118 S.Ct. 1604.

26. *Id.*

27. *Id.* at 622, 118 S.Ct. 1604 (citations omitted).

28. *Williams v. United States*, 656 A.2d 288, 293 (D.C.1995) (quoting *Johnson v. United States*, 631 A.2d 871, 874 (D.C.1993)). The standard is the same when a post-sentence challenge to a conviction following a guilty plea is brought under D.C.Code § 23–110. *Id.* at 293 n. 6. And in order to secure a writ of error *coram nobis*, a defendant similarly must show, among other things, "an error amounting to 'a miscarriage of justice.' " *Butler v. United States*, 884 A.2d 1099, 1105 (D.C. 2005) (citations omitted).

he was using the firearms and ammunition to protect illegal drugs"—a use that we may assume would disqualify Magnus from invoking the protections of the Second Amendment.[29] But without first having afforded Magnus a hearing on his claims, the court reached that conclusion prematurely. Magnus was entitled to a chance to prove his assertion that he kept his weapons only for self-defense and had nothing to do with the marijuana (which, after all, was not found in the room he rented). In defense of the court's ruling, the government cites a sentence in Magnus's signed statement to the police—"If someone came to the house to rob the marijuana from Chris I would use my guns to protect the marijuana and Chris from being harmed." But Magnus disputes the significance of that hypothetical and arguably ambiguous remark, claiming the police distorted what he actually told them when they wrote it down in the document he signed; and the trial court specifically declined to consider it in ruling against him.[30]

■■■ At this stage, we see no other insurmountable barrier to Magnus's request for a hearing on his challenge to his convictions. The trial court correctly ruled that Magnus could not proceed under D.C.Code § 23–110 because he was no longer "in custody under sentence of the Superior Court" when he filed his petition.[31] Rule 32(e) does not contain a similar in-custody requirement, though—as the government notes without taking a position—we have reserved ruling on whether one is implicit.[32] We deem it unnecessary to resolve that issue here, because *coram nobis* relief unquestionably is available to petitioners who are no longer in custody.[33]

■■■ As a court established by Act of Congress, the Superior Court is empowered to issue the writ of error *coram nobis* by the All Writs Act.[34] *Coram nobis* relief is available only to correct a miscarriage of justice resulting from "errors of the most fundamental character," where no other remedy is available and "sound reasons exist[ ] for failure to seek appropriate earlier relief...."[35] From its inception at early common law, the function of the writ of error *coram nobis* was to correct crucial factual errors that were unknown to the trial court.[36] The court below ruled that

29. *Cf. Howerton v. United States*, 964 A.2d 1282, 1287 (D.C.2009) (holding that trial court did not plainly err in rejecting appellant's claim that his possession of a handgun in his home was protected by the Second Amendment, where appellant had used the handgun to assault his girlfriend and there was no evidence that he had possessed the weapon for purposes of self-defense).

30. *See supra*, notes 6 & 7. Although Magnus waived his right to move to suppress the statement when he pleaded guilty, on remand he will be entitled, in attempting to establish his actual innocence at an evidentiary hearing on his motion, to try to convince the court that he did not make the statement or that the police distorted what he did say to them.

31. D.C.Code § 23–110(a) (2001). *See Mitchell v. United States*, 977 A.2d 959, 963 (D.C.

2009); *Thomas v. United States*, 766 A.2d 50, 51 (D.C.2001).

32. *See Thomas*, 766 A.2d at 52.

33. *See United States v. Morgan*, 346 U.S. 502, 504–05, 74 S.Ct. 247, 98 L.Ed. 248 (1954). Indeed, because the writ of error *coram nobis* is an option only if no other adequate relief is available, it will not be available to prisoners "in custody" who are able to proceed under D.C.Code § 23–110.

34. 28 U.S.C. § 1651(a) (2006).

35. *Morgan*, 346 U.S. at 512, 74 S.Ct. 247 (internal quotation marks omitted). *Accord United States v. Higdon*, 496 A.2d 618, 619–20 (D.C.1985).

36. *Morgan*, 346 U.S. at 507, 74 S.Ct. 247.

Magnus could not secure a writ of error *coram nobis* because he alleged an error of law by the trial judge rather than an error of fact.

■■■■■ But even if the error claimed by Magnus was a legal one—a misconception by the trial court at the time of the guilty plea as to the conduct constitutionally within the reach of the CPWL, UF, and UA statutes—he still may pursue *coram nobis* relief. Such relief is no longer limited to the correction of purely factual errors. At least since the Supreme Court resurrected the remedy over half a century ago in *Morgan,* its scope has expanded to encompass the correction of fundamental legal errors in addition to factual ones.[37] The Court recently described modern *coram nobis* as "an extraordinary tool to correct a legal or factual error."[38] And, as a leading treatise observes, federal courts routinely have granted the writ in cases such as this one, "where the applicant demonstrates that his conduct was not criminal under the law as later interpreted by the [Supreme] Court."[39] In *United States v. Mandel,* for example, the Fourth Circuit granted *coram nobis* relief "in light of a retroactive dispositive change in the law of mail fraud" effected by a subsequent Supreme Court decision.[40] Other federal courts of appeals (not to mention federal district courts) have reached the same conclusion.[41] A convic-

---

**37.** In *Morgan,* the Supreme Court approved the use of *coram nobis* to raise a claim of fundamental constitutional error, namely a denial of counsel at trial in violation of the defendant's Sixth Amendment right. *See id.* at 506–511, 74 S.Ct. 247. As one commentator has explained,

> This holding transformed *coram nobis* from its traditional function as a means for curing factual errors, unknown to the trial court, to a new function of curing any error of 'the most fundamental character,' including legal error.... By focusing on the phrase 'errors of the most fundamental character' and ignoring the phrase 'errors of fact,' the Court not only rescued *coram nobis* from legal 'limbo,' but also revitalized the writ by creating a new function for it. Rather than an obscure writ only good for correcting factual errors, *coram nobis* became a collateral remedy available in federal court to correct fundamental legal errors when alternative avenues of relief are unavailable.

David Wolitz, *The Stigma of Conviction: Coram Nobis, Civil Disabilities, and the Right to Clear One's Name,* 2009 BYU. L.Rev. 1277, 1286–87 (2009).

**38.** *United States v. Denedo,* — U.S. ——, 129 S.Ct. 2213, 2221, 173 L.Ed.2d 1235 (2009). *See also* 3 CHARLES ALAN WRIGHT, NANCY J. KING, SUSAN R. KLEIN AND SARAH N. WELLING, FEDERAL PRACTICE & PROCEDURE § 592, at 687 (3d ed. 1998) ("The present-day scope of coram nobis is broad enough to encompass not only errors of fact that affect the validity or regularity of legal proceedings, but also legal errors of a constitutional or fundamental proportion.") (footnotes omitted). State courts generally have followed the trend initiated by *Morgan. See, e.g., Skok v. State,* 361 Md. 52, 760 A.2d 647, 658–59 (2000) (citing cases); *see also id.* at 661 ("[T]here should be a remedy for a convicted person who is not incarcerated and not on parole or probation, who is suddenly faced with a significant collateral consequence of his or her conviction, and who can legitimately challenge the conviction on constitutional or fundamental grounds. Such person should be able to file a motion for coram nobis relief regardless of whether the alleged infirmity in the conviction is considered an error of fact or an error of law.").

**39.** 7 WAYNE R. LaFAVE ET AL., CRIMINAL PROCEDURE § 28.9(a), at 283 (footnote omitted) (3d ed. 2007).

**40.** *United States v. Mandel,* 862 F.2d 1067, 1075 (4th Cir.1988).

**41.** *See United States v. Fowler,* 891 F.2d 1165, 1167 (5th Cir.1990); *United States v. Walgren,* 885 F.2d 1417, 1420–24 (9th Cir.1989); *United States v. Travers,* 514 F.2d 1171, 1176 (2d Cir.1974). *See also United States v. Peter,* 310 F.3d 709, 712 (11th Cir.2002) (granting writ of error *coram nobis* to petitioner who had pleaded guilty to a racketeering conspiracy charge); Romualdo P. Eclavea, Annotation,

tion for conduct that is not criminal, but is instead constitutionally-protected, is the ultimate miscarriage of justice.

*Reversed and remanded.*

*Availability, Under 28 U.S.C.A. § 1651, of Writ of Error Coram Nobis to Vacate Federal Conviction Where Sentence Has Been Served, 38 A.L.R. Fed. 617, 660 et seq. (1978) (collecting cases approving coram nobis relief where a subsequent Supreme Court or court of appeals decision held the statute allegedly violated to be unconstitutional as applied to the petitioner, or held the petitioner's conduct not to be criminal under the statute).*