# District of Columbia
# Court of Appeals

No. 13-CO-273

SURUR FATUMABAHIRTU,

Appellant,

v.

CMD-17041-07

UNITED STATES,

Appellee.



FILED

NOV - 3 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE: GLICKMAN and BECKWITH, *Associate Judges;* and FERREN, *Senior Judge*.

## J U D G M E N T

This case was submitted to the court on the transcript of record, the briefs filed, and without presentation of oral argument. On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment on appeal is reversed, and the matter is remanded for further proceedings.

For the Court:

JULIO A. CASTILLO<br>Clerk of the Court

Dated: November 3, 2016.

Opinion by Associate Judge Corinne Beckwith.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

No. 13-CO-273

SURUR FATUMABAHIRTU, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED 11/3/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CMD-17041-07)

(Hon. Wendell P. Gardner, Jr., Trial Judge)

(Submitted February 3, 2015                    Decided November 3, 2016)

*Jeffrey L. Light* was on the brief for appellant.

*Ronald C. Machen*, United States Attorney at the time the brief was filed, with whom *Elizabeth Trosman*, *Elizabeth H. Danello*, and *Edward G. Burley*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and BECKWITH, *Associate Judges*, and FERREN, *Senior Judge*.

BECKWITH, *Associate Judge*:  Fatuma Bahiru Surur[1] appeals the denial of her petition for a writ of error *coram nobis* alleging ineffective assistance of trial counsel and the denial of her motion under the Innocence Protection Act, D.C.

---

[1] The case caption incorrectly switches Ms. Surur's given and family names and combines her first and middle names.

Code §§ 22-4131 to -4135 (2012 Repl.), to set aside her 2008 conviction for attempted possession of drug paraphernalia with intent to sell, D.C. Code §§ 48-1103 (b), 22-1803 (2012 Repl.). We conclude that Ms. Surur's trial counsel rendered constitutionally deficient performance when he failed to investigate a mistaken-identification defense. Absent this failure, there is a reasonable probability that a reasonable factfinder would have had a reasonable doubt as to whether Ms. Surur was the gas station clerk who sold paraphernalia to an undercover officer in this case on June 28, 2007, and that the factfinder would in turn have had a reasonable doubt as to whether, more than a week later when police executed a search warrant while Ms. Surur was present at the gas station, she had the intent necessary to commit the crime of attempted possession of drug paraphernalia with intent to sell. We therefore reverse the judgment of the Superior Court.

The facts of this case are set out in *Fatumabahirtu v. United States*, 26 A.3d 322 (D.C. 2011), our prior opinion affirming Ms. Surur's conviction on direct appeal. Briefly, the government alleged that Ms. Surur was working as a clerk at a gas station convenience store on June 28, 2007, when an undercover officer, Jose Garcia, entered the store and asked to buy an "ink pen." The clerk, whom the officer identified at trial as Ms. Surur, responded by giving the officer an ink pen and a copper scouring pad. Knowing that these items were commonly used to

make crack pipes, Officer Garcia concluded that the clerk intended to sell him drug paraphernalia, and the Metropolitan Police Department applied for and received a search warrant. Other MPD officers executed the warrant and seized several items (including more glass pens and scouring pads) on July 6, 2007, while Ms. Surur was working in the store. Ms. Surur and the store owner, Shahzad Aslam, were charged with, and ultimately convicted of, attempted possession of drug paraphernalia with intent to sell. The information charged that the offense occurred on July 6, but it is unclear from the trial record whether the trial court convicted Ms. Surur based on her conduct on this date or instead on her alleged June 28 sale. In the present appeal, we will assume that the conviction was based on the July 6 conduct, and that the trial court considered the alleged sale on June 28 to be circumstantial evidence of Ms. Surur's mens rea on July 6.[2]

Ms. Surur's direct appeal focused primarily on whether the government presented sufficient evidence that Ms. Surur had the "specific intent to deliver or sell drug paraphernalia" and that she "knew, or reasonably should have known, that the buyer of the items would use them illegally to inject, ingest, or inhale a controlled substance." *Fatumabahirtu*, 26 A.3d at 325. This court held that the

---

[2] Ultimately, it makes no difference in our analysis whether the offense occurred on June 28 or July 6.

government's evidence did establish intent, stating that

> [t]he trial court credited Officer Garcia's account of the sale, that he asked for "an ink pen" and that Ms. [Surur] gave him a glass ink pen and a metal scouring pad, even though he did not request a metal scouring pad. The trial court could reasonably infer that despite the fact that Ms. [Surur] had recently arrived in the United States, someone at the store trained her to give a buyer both a glass ink pen and a copper scouring pad when the buyer asked for an ink pen, and that she either knew or reasonably should have known that the purchase was for the purpose of taking illegal drugs.

*Id.* at 336.

Now seeking post-conviction relief, Ms. Surur alleges in her motion to vacate her conviction under the Innocence Protection Act that she was not the store clerk who sold Officer Garcia the pen and metal pad on June 28, 2007. Her petition for a writ of error *coram nobis* contends, in relevant part, that her trial counsel was constitutionally ineffective for failing to conduct a reasonable investigation. The petition contends that such an investigation would have yielded information to impeach Officer Garcia's account of the sale, including (among other things) his assertion that Ms. Surur was the clerk who sold him the pen and scouring pad.

At the hearing on her motion and petition, Ms. Surur further alleged that counsel was ineffective for failing to reasonably investigate whether she was the store clerk who encountered Officer Garcia on June 28 and, accordingly, for failing

to raise a mistaken-identification defense at trial.[3]  In that regard, Ms. Surur's trial counsel testified that he did not investigate facts relevant to a misidentification defense—he did not "undertak[e] anything specific in terms of trying to pinpoint whether or not Miss Surur was at the gas station the date of the alleged sale," for example, or determine what clothes Ms. Surur wore to work or how her physical characteristics compared to Officer Garcia's description of the clerk he claimed sold him the paraphernalia.  Specifically, he did not ascertain that Ms. Surur was 5'3" and weighed 160 pounds (as compared to the woman the officer's report described as 5'6" and 170 pounds), or that Ms. Surur did not own black pants or a blue and white headscarf, which are the clothes the officer described the clerk as wearing on June 28.  Forgoing a mistaken-identity defense was not a strategic decision, counsel testified:  He "just . . . went with a different defense"—namely, a defense in which he attacked the government's evidence that Ms. Surur knew or had reason to know the items were drug paraphernalia.  He testified that he did not recall "[i]f it was a matter of sort of discarding other defenses or just going with the one that immediately jumped out to me as being the best.  I don't recall how that process worked.  But I know that I did not pursue a mistaken ID defense."  Counsel agreed that a mistaken-identification defense was not incompatible with

---

[3]  We disagree with the government that Ms. Surur raises this argument for the first time on appeal.  The trial court ruled on the argument at the hearing.

the defense he pursued at trial, and he testified that Ms. Surur's height and clothing might have been relevant where the person "the government is alleging was arrested and [sic] somehow was not the same person," but that that "was not our defense." Some attorneys, he noted, "would challenge every piece of testimony or evidence that the government offers," but he "tend[ed] typically to take a different view of that and that you sort of focus on what the theory of your case is."

Ms. Surur testified at the hearing that in June of 2007, she was working approximately two days a week at the gas station, that she did not own black pants and instead wore blue jeans to work, and that she did not own, or wear to work, a blue and white headscarf. Her passport indicated that she was 5'3".[4] Hayat Ousman, another employee of the gas station, testified that in June of 2007, she worked at the station seven days a week, that she owned black pants and blue and white headscarves, and that she sometimes wore them to work. The prosecutor stipulated that Ms. Ousman was 5'7" and weighed 170 pounds in June of 2007. Ms. Surur and Ms. Ousman were Ethiopian women who were related to each other and who both described their complexions as medium.

At the conclusion of the hearing, the trial court denied relief, and Ms. Surur

---

[4] Ms. Surur did not remember her weight at the hearing, but the police department report from the day of her arrest listed her weight as 160 pounds.

timely appealed.

## II.

We begin by addressing Ms. Surur's ineffective assistance of counsel claim. "To establish ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that this deficient performance prejudiced the defendant." *Vaughn v. United States*, 93 A.3d 1237, 1271 (D.C. 2014).

Turning to the first prong of ineffectiveness, Ms. Surur argues that trial counsel's failure to reasonably investigate whether she was the store clerk on June 28 constituted deficient performance. At the outset, the government argues that a mistaken-identification defense—that is, evidence that Ms. Surur was not the clerk who sold Officer Garcia paraphernalia on June 28—would have been irrelevant and unsuccessful because Ms. Surur "readily admitted that she was present at the time of the actual offense, July 6." This was a key basis of the trial court's ruling as well. This argument overlooks the centrality of Officer Garcia's testimony to the government's case. The only evidence the government presented that Ms. Surur had the requisite mens rea—specific intent to sell drug paraphernalia with knowledge or reason to know that it would be used to consume a controlled substance—was that she sold a copper pad along with a glass ink pen despite not having been asked to do so. *See Fatumabahirtu*, 26 A.3d at 336. If Ms. Surur was

not the clerk Officer Garcia encountered on June 28, 2007, there was not sufficient evidence to convict her of attempted possession of drug paraphernalia with intent to sell on July 6.

The government contends, alternatively, that trial counsel's decision to pursue only one defense—lack of intent—rather than also presenting a mistaken-identity defense was "strategic and tactical." And indeed, at the hearing on Ms. Surur's motion, trial counsel testified that he may have decided against exploring any other defenses because "at some point you run the risk of confusing the fact finder and even planting a seed with the fact finder consciously or not that neither of your theories [is] particularly compelling so I'm going to try two." But "the issue in evaluating counsel's performance is not the reasonableness of the strategy counsel ultimately pursued at appellant's trial, but 'the reasonableness of the investigation said to support that strategy.'" *Cosio v. United States*, 927 A.2d 1106, 1126 (D.C. 2007) (en banc) (quoting *Wiggins v. Smith*, 539 U.S. 510, 527 (2003)). Trial counsel testified that he did not question Ms. Surur about her physical appearance to determine whether she matched Officer Garcia's description. He acknowledged that he did not search for time sheets or other extrinsic evidence to determine whether Ms. Surur was working on June 28. Trial counsel did not ask basic questions that would have uncovered the fact that the store employed another female Ethiopian clerk with a similar skin complexion who

wore headscarves to work, who worked every day (in contrast to Ms. Surur's two days a week), and who incidentally was a closer match in height and weight to Officer Garcia's estimated description.

Trial counsel's failure to investigate a misidentification defense was particularly marked given that he was—or should have been—on notice of the possibility of this defense. At trial, Ms. Surur testified that she had never seen Officer Garcia before, that she did not remember ever selling an ink pen and a copper scrubber to a customer, and that she "never" would "combine items to sell, . . . if the [customer] just asked for one item." Competent trial counsel would have gone over Ms. Surur's testimony with her prior to putting her on the witness stand and thus would have been aware that she denied selling an ink pen and copper scrubber to Officer Garcia. Unless Officer Garcia fabricated his entire story, the better explanation was that someone other than Ms. Surur had sold the items to him.

This court has stated that "deference" to counsel's strategic choices "does not come into play" when counsel "'offered no strategic explanation for failing to pursue these avenues' of investigation." *Cosio*, 927 A.2d at 1126 (quoting *Poindexter v. Mitchell*, 454 F.3d 564, 579 (6th Cir. 2006)). In this case, trial counsel provided no strategic explanation for failing to explore the possibility that

Ms. Surur was not the clerk on duty on the evening of June 28. That trial counsel had not pursued that possibility became apparent when, after Ms. Surur denied under oath that she had ever seen Officer Garcia and testified that she did not remember ever selling an ink pen and copper scrubber to a customer, trial counsel failed to further develop this testimony or present any corroborating evidence. While counsel suggested at trial that Officer Garcia was lying about the entire sale having occurred at all,[5] counsel never explored the possibility that the sale did occur but that Ms. Surur was not the clerk involved.[6] "[C]ounsel's investigative omission 'resulted from inattention, not reasoned strategic judgment,'" and "we owe no deference in the present case to counsel's 'judgment' as to the scope of his investigation." *Id.* at 1126–27 (quoting *Wiggins*, 539 U.S. at 526); *see also Kigozi v. United States*, 55 A.3d 643, 651 (D.C. 2012) ("[C]ounsel's arbitrary or ill-considered decision to forgo relevant pre-trial investigation is constitutionally

---

[5] That trial counsel attempted to show that Officer Garcia was lying undermines counsel's suggestion at the postconviction hearing that he was reluctant to present multiple defense theories at trial.

[6] It is also notable that Officer Garcia did not identify Ms. Surur as the person who sold him the ink pen until the suppression hearing that immediately preceded the bench trial, which was held months after the alleged sale. On cross-examination, Officer Garcia testified that he had not seen Ms. Surur since the day he purchased the ink pen and that he had reviewed a photograph of Ms. Surur from police records prior to testifying. Under these suggestive circumstances, the possibility of misidentification was very real.

deficient.").

For these reasons, we conclude that trial counsel's investigation in this case was objectively unreasonable.  *Cosio*, 927 A.2d at 1127 ("[T]he pertinent question under the first prong of *Strickland* remains whether, after considering all the circumstances of the case, the attorney's representation was objectively unreasonable." (quoting *Bullock v. Carver*, 297 F.3d 1036, 1050–51 (10th Cir. 2002))).  While trial counsel argued that "there's nothing to suggest that Ms. [Surur] knew, or should have known, . . . that the pens and scrubbers would be . . . altered to convert them into a pipe," the most powerful evidence that she lacked this knowledge would have been evidence that she was not actually the clerk who made the June 28 sale.  And yet trial counsel did not take basic steps to determine the viability of a mistaken-identification defense.  As this court recognized in its opinion on direct appeal, *Fatumabahirtu*, 26 A.3d at 336, the evidence that Ms. Surur was present on June 28 was essential to the government's case.  Trial counsel's failure to perform any investigation to undermine the government's central premise was objectively unreasonable.

At the hearing on the *coram nobis* petition, the government attributed trial counsel's limited investigation to Ms. Surur's failure to tell trial counsel that she was not the sales clerk on June 28:  "[I]f you've got an alibi, and you don't tell

your defense attorney I wasn't there, how is your defense attorney in the normal course of business supposed to go figure out that you've got an alibi if you haven't mentioned it." As we stated in *Cosio*, "[c]ounsel's actions are usually based, quite properly, . . . on information supplied by the defendant." 927 A.2d at 1128 n.22 (quoting *Strickland v. Washington*, 466 U.S. 668, 691 (1984)). On the other hand, "[a] client should not be expected to anticipate the best defense and then volunteer every kind of information he or she has in support of it." *Id.* (quoting *Cosio v. United States*, 853 A.2d 166, 172–73 (D.C. 2004) (panel opinion vacated en banc)); *see also Cosio*, 853 A.2d at 173 ("It is the lawyer's job to ask the right questions of the client . . . ."). Indeed, when trial counsel was asked at the hearing whether "[i]n your professional experience . . . your clients always volunteer all of the information you need without your prompting them," he responded, "No. Absolutely not." This hazard was a real one in this case, as Ms. Surur was present on July 6 when the officers executed the search warrant, and a reasonable layperson—especially one new to the United States and not fluent in English— could not be expected to understand the importance of her presence at (or absence from) the store more than a week earlier on June 28.

Having concluded that trial counsel's investigation was deficient, we turn to whether Ms. Surur suffered prejudice as a result. *Vaughn*, 93 A.3d at 1271. To establish prejudice, "a defendant need not show that counsel's deficient conduct

more likely than not altered the outcome in the case." *Blakeney v. United States*, 77 A.3d 328, 341 n.18 (D.C. 2013) (quoting *Strickland*, 466 U.S. at 693). "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694). "[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Cosio*, 927 A.2d at 1132 (quoting *Strickland*, 466 U.S. at 695). More specifically, where, as here, the case was tried not by a jury but instead by a judge in a bench trial, we ask whether there is a reasonable probability that a "hypothetical judge 'reasonably, conscientiously, and impartially applying the standards that govern the decision'" would have had a reasonable doubt as to the defendant's guilt. *United States v. Abney*, 812 F.3d 1079, 1093 (D.C. Cir. 2016) (quoting *Strickland*, 466 U.S. at 694); *see also Strickland*, 466 U.S. at 694 (explaining that the prejudice determination "should not depend on the idiosyncra[s]ies of the particular decisionmaker"); *Saranchak v. Beard*, 616 F.3d 292, 309 (3d Cir. 2010); *Ploof v. State*, 75 A.3d 840, 877 (Del. 2013).

That Ms. Surur sold Officer Garcia the items on June 28 was, as noted above, the crucial evidence necessary to establish the mens rea for attempted possession of drug paraphernalia with intent to sell. The evidence produced at the

hearing on Ms. Surur's petition cast significant doubt upon the government's evidence in that regard. The evidence indicated that the height and weight of Ms. Surur's relative, Ms. Ousman, were a closer fit to Officer Garcia's estimated description than were Ms. Surur's height and weight. Ms. Surur also testified that she never wore black pants to work and that she did not own a blue and white headscarf, which is how Officer Garcia described the store clerk's clothing, whereas Ms. Ousman did sometimes wear black pants and a blue and white headscarf to work. And the court heard evidence that both women were Ethiopian with a similar complexion. It is therefore at least plausible that it was Ms. Ousman, and not Ms. Surur, who sold Officer Garcia the items in question on June 28, 2007. Ms. Ousman testified that she did not remember working on June 28 but that she "used to work seven days [per week] so might be."[7]

In denying Ms. Surur relief, however, the trial court emphasized that Ms. Ousman did not testify that she *was* the clerk who interacted with Officer Garcia. And Ms. Surur did not testify that she did not work on June 28—just that she

---

[7] The trial court discounted this testimony by noting that Ms. Ousman also testified that she took days off for the holiday of Eid. We take judicial notice that in 2007, Eid al-Fitr was on October 12 and Eid al-Adha was on December 20, neither of which is relevant here.

"didn't recall" whether she did so.[8] The court also made much of the fact that Ms. Surur signed an affidavit stating that she *did* work on June 28, 2007. Furthermore, the store owner, Mr. Aslam, testified that he "believe[d]" that Ms. Surur was the person working at the store on June 28. And while Ms. Surur's trial lawyer never specifically challenged the reliability of Officer Garcia's in-court identification of her as the June 28 store clerk, he did go to some lengths to attack the accuracy of Officer Garcia's testimony and to impeach his credibility.

These facts do not convince us that trial counsel's failures caused Ms. Surur no prejudice. As an initial matter, it is incorrect to characterize Ms. Surur as having conceded she was working on June 28. As Ms. Surur testified at the hearing, the date in the affidavit was a mistake. The affidavit should have said she worked on July 6, not June 28.[9] Any other reading of the affidavit would defy

---

[8] The prosecutor actually questioned Ms. Surur about working on June 27, but he presumably intended to ask (and was likely understood to have asked) about June 28.

[9] Ms. Surur's testimony was as follows:

> Q. So when you were signing the declaration, it was your intention that the date corresponded to the date you were arrested [July 6], is that correct?
>
> A. Yes.
>
> Q. So if the declaration had the date of the alleged sale instead of the date of the arrest, that was an oversight on your part, is that correct?

(continued…)

logic and contradict Ms. Surur's unswerving testimony—from her insistence at trial that she had never seen Officer Garcia before to her hearing testimony that she did not recall whether she worked on June 28—that she did not sell paraphernalia to the officer on June 28. Second, Ms. Surur did not have to definitively establish Ms. Ousman's guilt of the offense in order to cast doubt upon her own guilt, and the absence of an outright confession on Ms. Ousman's part does not preclude us from determining that there was a reasonable probability that, absent trial counsel's errors, a reasonable factfinder would have had a reasonable doubt respecting Ms. Surur's guilt. And finally, the vague and sometimes contradictory evidence in the post-conviction hearing record appears to stem in large part from the passage of time—and the fact that trial counsel did not investigate who was working at the convenience store when the incident was fresh in everyone's mind—coupled with a significant language barrier between counsel and the witnesses.[10]

---

(…continued)
> A. Yes, I only remember the date when I was arrested, not when I was allegedly standing.

On cross-examination, Ms. Surur reiterated that she "d[id] not recall" whether she was working on the day of the sale—only that she was working on the day she was arrested.

[10] Both Ms. Surur and Ms. Ousman testified through an interpreter, suggesting that they lacked fluency in the English language. Not only does this fact explain some of the difficulties in their testimony, but it makes it unlikely that either Ms. Surur or Ms. Ousman wrote her own affidavit. As this court recently explained, "the circumstances in which inconsistent statements were made, and the

(continued…)

Trial counsel's deficient performance failed to uncover key evidence regarding Ms. Ousman's employment that, now presented, raises a reasonable doubt that the government has prosecuted the right person for this crime. We conclude that there is a reasonable probability that the trial outcome would have been different had trial counsel performed an adequate investigation into whether Ms. Surur was working on June 28, and that Ms. Surur has satisfied the prejudice prong of the *Strickland* test. *See Cosio*, 927 A.2d at 1132.

## III.

Having established that Ms. Surur's trial counsel was constitutionally ineffective, we next address whether she is entitled to relief on her petition for a writ of error *coram nobis*. As the government points out, ineffectiveness claims

---

(…continued)

declarants' explanations for the inconsistencies, must be taken into account." *See Caston v. United States*, No. 15-CO-36, 2016 WL 5827479, at *11 (D.C. Sept. 29, 2016). Here, the trial court questioned Ms. Surur's and Ms. Ousman's credibility, but the extent to which the court considered the witnesses' lack of English fluency—particularly with respect to the trial court's reliance upon the contradiction in Ms. Surur's affidavit—is not clear from the record. *See id.* at *10 (explaining that the trial court should have conducted a "nuanced analysis of [a witness's] inconsistencies" where "the record makes clear that someone other than [the witness] typed his affidavit and that [his] attention to language and detail was wanting"). As noted above, even if Ms. Surur and Ms. Ousman were not entirely credible, their hearing testimony was sufficient to create a reasonable probability that a reasonable factfinder would have had reasonable doubt about Ms. Surur's guilt.

are most often raised in a D.C. Code § 23-110 motion for post-conviction relief, but such an avenue is unavailable to Ms. Surur here because she is not in custody. *See Magnus v. United States*, 11 A.3d 237, 245 (D.C. 2011). A motion for a writ of error *coram nobis* is therefore the proper vehicle to advance her ineffectiveness claim.

To obtain *coram nobis* relief, "a petitioner is required to demonstrate that: (1) the trial court [was] unaware of the facts giving rise to the petition; (2) the omitted information [is] such that it would have prevented the sentence or judgment; (3) petitioner [is] able to justify the failure to provide the information; (4) the error [is] extrinsic to the record; and (5) the error [is] of the most fundamental character."[11] *Butler v. United States*, 884 A.2d 1099, 1104–05 (D.C. 2005) (quoting *United States v. Hamid*, 531 A.2d 628, 634 (D.C. 1987)). Ms. Surur's successful claim of ineffective assistance of counsel satisfies all five criteria. First, the trial court would have been unaware that trial counsel performed ineffectively, as the alleged deficiency was a failure to reasonably investigate in

---

[11] We note that in the District of Columbia, unlike in some other jurisdictions, *coram nobis* relief is available for "the correction of fundamental legal errors in addition to factual ones." *Magnus*, 11 A.3d at 246.

order to discover additional information.[12]  Second, that Ms. Surur established prejudice as a result of ineffective assistance of counsel is sufficient to show that the judgment here would not have been entered absent the error.[13]  Third, her failure to inform the judge of ineffective assistance during the trial was justified because she would have been unaware that trial counsel was performing ineffectively.  Fourth, proving ineffective assistance of counsel "generally require[s] that the record be supplemented with 'extrinsic evidence that illuminates the attorney's errors,'" *McCleese v. United States*, 75 F.3d 1174, 1178 (7th Cir. 1996) (quoting *Bond v. United States*, 1 F.3d 631, 635 (7th Cir. 1993)), such as the evidence here that another person may have been the store clerk on June 28 and

---

[12]  Thus, the "new fact" that Ms. Surur presented was not that "she did not make the sale of paraphernalia on June 28" or that "someone else did so," as the government characterizes it.  The new fact about which the court was previously unaware was that her trial counsel did not reasonably investigate the circumstances of the charged crime.

[13]  We see no reason a meritorious *Strickland* claim should not be sufficient in itself to satisfy the second requirement for *coram nobis* relief.  The D.C. Superior Court's authority to grant a writ of error *coram nobis* derives from the All Writs Act, 28 U.S.C. § 1651 (a).  *See Magnus*, 11 A.3d at 245–46 (D.C. 2011). Federal courts, applying the same statute, have found it appropriate to grant *coram nobis* relief for *Strickland* claims.  *See, e.g.*, *Kovacs v. United States*, 744 F.3d 44 (2d Cir. 2014); *United States v. Mett*, 65 F.3d 1531, 1534 (9th Cir. 1995); *United States v. Castro*, 26 F.3d 557, 559 (5th Cir. 1994); *Denedo v. United States*, 66 M.J. 114, 126 (C.A.A.F. 2008), *aff'd and remanded*, 556 U.S. 904 (2009).  More generally, the Supreme Court has approved *coram nobis* relief for violation of a defendant's Sixth Amendment right to counsel.  *See United States v. Morgan*, 346 U.S. 502 (1954).

that trial counsel did not ask questions to discover this information.  And fifth,
federal courts have routinely held that ineffective assistance is an error "of the
most fundamental character."  *United States v. Akinsade*, 686 F.3d 248, 256 (4th
Cir. 2012); *see also United States v. Castro*, 26 F.3d 557, 559 & n.5 (5th Cir.
1994); *United States v. Rad-O-Lite of Phila., Inc.*, 612 F.2d 740, 744 (3d Cir.
1979).

As a result, Ms. Surur's meritorious ineffective assistance of counsel claim
entitles her to a new trial on a writ of error *coram nobis*.[14]  We reverse and remand
for further proceedings.

*So ordered.*

---

[14]  We therefore need not consider whether Ms. Surur is entitled to a new trial under the Innocence Protection Act.  D.C. Code § 22-4135 (g)(2).  We do conclude, however, for the reasons discussed on pages 14–15, that the evidence presented at Ms. Surur's post-conviction hearing does not establish clear and convincing evidence of actual innocence such that we must "vacate the conviction and dismiss the relevant count with prejudice."  D.C. Code § 22-4135 (g)(3).