Kovacs v. United States

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2013

(Argued: November 21, 2013    Decided: March 3, 2014)

Docket No. 13-0209

- - - - - - - - - - - - - - - - - - - - -x

STEPHEN KOVACS,

    Petitioner-Appellant,

  - v.-

UNITED STATES OF AMERICA,

    Respondent-Appellee.

- - - - - - - - - - - - - - - - - - - - -x

  Before:   KEARSE, JACOBS, and PARKER, Circuit
       Judges.

  Appeal from a judgment of the United States District Court for the Eastern District of New York, denying Stephen Kovacs' petition for a writ of error *coram nobis* to vacate his 1999 guilty plea to misprision of felony.  We reverse and order the granting of the writ.

          NICHOLAS A. GRAVANTE, JR.
          (Thomas Ling, on the brief),
          Boies, Schiller & Flexner LLP,
          New York, N.Y., for
          Appellant.

MICHAEL H. WARREN (Peter A. Norling, on the brief), for Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, N.Y., for Appellee.

The Opinion of the Court is filed by Judge JACOBS. Judge KEARSE concurs except for Part I.B.1.

DENNIS JACOBS, Circuit Judge:

Petitioner Stephen Kovacs appeals from a judgment of the United States District Court for the Eastern District of New York (Wexler, J.), denying his petition for a writ of error *coram nobis*. Kovacs was convicted for misprision of felony, in violation of 18 U.S.C. § 4, and seeks the writ on the ground that his lawyer rendered ineffective assistance by giving erroneous advice concerning the deportation consequences of pleading guilty to that offense, with the result that he is at risk of detention and deportation if he reenters the United States. The district court denied the petition without an evidentiary hearing. For the reasons that follow, we reverse and order the granting of the writ.

**BACKGROUND**

Stephen Kovacs is an Australian national who became a permanent resident of the United States in 1977. While

2

here, Kovacs founded International Bullion and Metal Brokers, Inc., an importer and distributor of gold and metal jewelry.  After Kovacs' company lost $250,000 in a 1991 burglary, Hanover Insurance Company dispatched a public adjustor named Eliot Zerring to assess the loss.  Zerring, who was corrupt, see Chubb & Son Inc. v. Kelleher, No. 92 CV 4484, 2010 WL 5978913 (E.D.N.Y. Oct. 22, 2010), purportedly convinced Kovacs to inflate the claim to $850,000.  The claim was submitted in September 1991 and paid later that month.  Kovacs ultimately took $400,000 of the $850,000, and Zerring kept the rest.

Kovacs was charged in October 1996 with wire fraud and conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 371 and 1343.  Kovacs instructed his lawyer, Robert Fink, to negotiate a plea that would have no immigration consequences.  Fink advised Kovacs that a conviction for misprision of felony, 18 U.S.C. § 4, would not impact his immigration status.  Fink allegedly conveyed these immigration concerns to the Government, which agreed to the misprision of felony charge.

On November 24, 1999, Kovacs pled guilty to a single count of misprision of felony.  Kovacs' immigration concerns were aired during the plea hearing.  At the outset, Fink

3

sought to seal the minutes of the guilty plea so immigration officials could not see them. The district court warned Kovacs that immigration consequences were not in its control and that it would give no such assurance. Fink, however, responded that he "researched it and we feel comfortable that this is not a deportable offense." Special App. at 12, ECF No. 31 (transcript of plea proceeding). At the conclusion of the proceeding, Fink again stated that "misprision of felony is not deportable." Id. at 16. The court accepted the plea.

Kovacs was sentenced on December 17, 2001 to five years' probation and restitution of $600,000. The district court granted a downward departure for extraordinary acceptance of responsibility in view of Kovacs' decision to forgo an available defense based on the five-year statute of limitations. Kovacs paid the restitution in full by August 8, 2002. In 2006, the district court granted a motion to terminate Kovacs' probation early.

Kovacs continued his regular international travel until April 2009, when immigration officials questioned Kovacs' eligibility for reentry on the ground that misprision of felony is considered a crime of moral turpitude. At that point, immigration officials directed him to appear for an

4

interview to evaluate his immigration status.  Kovacs discussed his options with his lawyers, but allegedly none of them advised him to seek vacatur of his conviction.

Before his scheduled interview, on the advice of counsel, Kovacs returned to Australia, where he currently resides.  His wife and children, all United States citizens, remain here.  Kovacs' children have had to adjust their lives to carry on the family business.

Kovacs alleges that, notwithstanding his efforts to seek counsel earlier, he first became aware of the possibility of *coram nobis* relief in October 2011.  At about that time, his counsel asked the Government to negotiate an agreed-upon motion for a writ of error *coram nobis*.  Negotiations failed, and Kovacs submitted a petition for the writ in May 2012.  The district court denied the petition on the ground that Kovacs could not show prejudice within the framework established by Strickland v. Washington, 466 U.S. 668 (1984).  Because the court denied the petition on those grounds, it did not reach the merits of the Government's other arguments: that the petition was untimely, and that Kovacs could not show Fink's advice was objectively unreasonable at the time the conviction became final.  Kovacs now appeals the denial of his petition.

**DISCUSSION**

A writ of error *coram nobis* is an "extraordinary remedy," United States v. Morgan, 346 U.S. 502, 511 (1954), typically available only when habeas relief is unwarranted because the petitioner is no longer in custody. See Porcelli v. United States, 404 F.3d 157, 158 (2d Cir. 2005). We review the legal standards applied by the district court *de novo*. Id.

A petitioner seeking *coram nobis* relief "must demonstrate that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." Foont v. United States, 93 F.3d 76, 79 (2d Cir. 1996) (internal citations and quotation marks omitted). There is no doubt that Kovacs' likely ineligibility to reenter the United States constitutes a continuing consequence of his conviction. The remaining questions are whether Fink's misadvice warrants granting the writ, and whether the petition was timely.

6

**I**

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). Thus, ineffective assistance of counsel is one ground for granting a writ of *coram nobis*. See Chhabra v. United States, 720 F.3d 395, 406 (2d Cir. 2013). A claim of ineffective assistance entails a showing that: 1) the defense counsel's performance was objectively unreasonable; and 2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687-88; see also Hill v. Lockhart, 474 U.S. 52, 58 (1985) (holding Strickland test applies to guilty plea challenges); Bennett v. United States, 663 F.3d 71, 84 (2d Cir. 2011).

**A**

The performance component of the Strickland test asks whether a "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. A defense counsel's performance is unreasonable when it is so deficient that it falls outside the "wide range of professionally competent assistance." Id. at 690.

7

As the district court observed, "there is no dispute that Fink misadvised Kovacs regarding the immigration consequences of his plea."  Memorandum and Order, <u>Kovacs v. United States</u>, No. 12-cv-02260, at 3 (E.D.N.Y. Jan. 2, 2013, ECF No. 18).  The transcript of the plea allocution reflects repeated erroneous assurances by Fink that misprision of felony was not a deportable offense.  We held in <u>United States v. Couto</u>, 311 F.3d 179, 188 (2d Cir. 2002), that an affirmative misrepresentation of the deportation consequences of a guilty plea falls outside this range of professional competence.  However, <u>Couto</u> was decided the year after Kovacs' 2001 conviction became final.  If Kovacs had entered his plea after <u>Couto</u> was decided, there is little doubt Fink's performance would be deemed unreasonable.  Kovacs seeks to apply <u>Couto</u> retroactively.[1]

The retroactive application of case law is governed by the rule set forth in <u>Teague v. Lane</u>, 489 U.S. 288 (1989),

---

[1] Because the district court ruled Kovacs could not make a showing of prejudice, the court did not decide whether <u>Couto</u> retroactively applies.  However, this issue has been argued by the parties and presents a pure question of law.  <u>See</u> <u>Hartford Courant Co. v. Pellegrino</u>, 380 F.3d 83, 90 (2d Cir. 2004) ("In general, we refrain from analyzing issues not decided below, but we have the authority to decide issues that were argued before but not reached by the district court.").

which looks to a decision's novelty. If a decision announces a new rule, "a person whose conviction is already final may not benefit from the decision in a habeas or similar proceeding." Chaidez v. United States, 133 S. Ct. 1103, 1107 (2013). Only if the Court applies a settled rule "may a person avail herself of the decision on collateral review." Id. "[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." Teague, 489 U.S. at 301 (emphasis in original). Such a holding must have been "apparent to all reasonable jurists." Chaidez, 133 S. Ct. at 1107 (quoting Lambrix v. Singletary, 520 U.S. 518, 527-28 (1997)).

We have little trouble concluding that, by the time Kovacs' conviction became final, the Couto rule was indicated, and was awaiting an instance in which it would be pronounced. Courts had concluded similar misadvice was objectively unreasonable as far back as the 1970s[2]; our decisions reflected this trend long before Kovacs'

---

[2] See, e.g., United States v. Briscoe, 432 F.2d 1351, 1353-54 (D.C. Cir. 1970); Downs-Morgan v. United States, 765 F.2d 1534, 1538-41 (11th Cir. 1985); United States v. Nagaro-Garbin, 653 F.Supp. 586, 590 (E.D. Mich. 1987); United States v. Corona-Maldonado, 46 F.Supp.2d 1171, 1173 (D. Kan. 1999).

9

conviction.  See United States v. Santelises, 509 F.2d 703, 704 (2d Cir. 1975) (per curiam) ("Since [defense counsel] does not aver that he made an affirmative misrepresentation, [petitioner] fails to state a claim for ineffective assistance of counsel."); Michel v. United States, 507 F.2d 461, 465 (2d Cir. 1974) ("While recognizing that deportation was a serious sanction, this court . . . [noted] that there was before it no allegation of misleading by counsel."); see also United States v. Zilberov, 162 F.3d 1149, 1998 WL 634211, at *1 (2d Cir. 1998) (unpublished summary order) ("[T]rial counsel's alleged warning of 'possible' deportation may have been inaccurate and, arguably, objectively unreasonable.").

The Government observes that these statements were dicta, not holdings; but if there had been holdings, there would be no occasion now to consider retroactivity.  Couto did nothing more than apply the "age-old principle that a lawyer may not affirmatively mislead a client."  Chaidez, 133 S. Ct. at 1119 (Sotomayor, J., dissenting).  At the time Kovacs' conviction became final, no reasonable jurist could find a defense counsel's affirmative misadvice as to the immigration consequences of a guilty plea to be objectively reasonable.

10

**B**

Once a petitioner shows deficient performance of defense counsel, the inquiry shifts to the prejudicial effect of that performance. To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In determining whether a different outcome sufficiently demonstrates prejudice, we must keep in mind that "a defendant has no right to be offered a plea, nor a federal right that the judge accept it." Missouri v. Frye, 132 S. Ct. 1399, 1410 (2012) (internal citations omitted).

Notwithstanding the prevalence of pleas in the criminal justice system, see id. at 1407, the Supreme Court has not often had occasion to consider Strickland prejudice in the plea negotiation context. The Government, relying on Hill, 474 U.S. 52, contends Kovacs can succeed only if he shows he would have gone to trial absent his attorney's unreasonable performance. While Kovacs contends he has made that showing, he also argues that he can demonstrate prejudice by

showing his ability to negotiate an alternative plea based on the holding of Frye, 132 S. Ct. 1399.

In Hill, the petitioner sought habeas relief to challenge his guilty plea to first-degree murder. Hill, 474 U.S. at 54. He alleged that his attorney's misadvice about when he would become eligible for parole caused his plea to be involuntary. See id. at 56. In that context, the Court stated that prejudice is shown when "there is a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59. Because the petitioner there did not allege that he would have insisted on trial or that he placed "particular emphasis on his parole eligibility in deciding" to plea, the Court denied his petition. Id. at 60.

Frye opened another avenue to showing prejudice in the pretrial process. Frye's lawyer failed to tell him of a proposed plea that would have resulted in a reduced sentence. 132 S. Ct. at 1404-05. The plea lapsed and Frye argued that he would have accepted the better offer but for his attorney's performance. Id. Prejudice can arise under Frye if a petitioner can "demonstrate a reasonable

12

probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." Id. at 1409.  In addition, a petitioner must show "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."  Id. Acknowledging that there is no right to a plea, the Court also required "a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented."  Id. at 1410.

The Government contends that Frye is limited to lapsed pleas and that Kovacs must satisfy the Hill standard.  We disagree.  "Hill . . . applies in the context in which it arose."  Id. at 1409.  "Hill does not . . . provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations."  Id. at 1409-10.[3]  The proper focus is not on the specific test applied in Hill or Frye; each case is a context-specific application of Strickland directed at a particular instance of unreasonable attorney performance.  See Hare v. United

---

[3] As the Supreme Court noted, "it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process."  Frye, 132 S. Ct. at 1407.

13

States, 688 F.3d 878, 879 (7th Cir. 2012) ("Both Hill and Frye apply Strickland's inquiry . . . ." (internal quotation marks omitted); see also Lafler v. Cooper, 132 S. Ct. 1376 (2012) (developing different test for prejudice when attorney misadvice leads to standing trial instead of accepting a plea offer).

We conclude that a defense lawyer's incorrect advice about the immigration consequences of a plea is prejudicial if it is shown that, but for counsel's unprofessional errors, there was a reasonable probability that the petitioner could have negotiated a plea that did not impact immigration status or that he would have litigated an available defense.[4]  See United States v. Kwan, 407 F.3d 1005, 1017-18 (9th Cir. 2005) ("Kwan could have gone to trial or renegotiated his plea agreement to avoid deportation.").  The petitioner must clearly demonstrate "that he placed particular emphasis on [immigration consequences] in deciding whether or not to plead guilty." Id. at 1017 (internal quotation marks omitted).

---

[4] See also Sasonov v. United States, 575 F.Supp.2d 626, 639 (D.N.J. 2008) (immigration consequences "may have been enough to . . . have allowed [petitioner] to negotiate a more favorable plea agreement with the Government."); United States v. Shaw, No. Civ.A. 03-6759, 2004 WL 1858336, at *11 (E.D. Pa. 2004) ("Defendant could have negotiated with the government in such a way as to produce a sentence that would not have triggered the INA mandatory removal provisions.").

14

Strickland prejudice focuses on the outcome of the proceeding rather than a defendant's priorities or desires. "[B]ecause a defendant has no right to be offered a plea," Frye, 132 S. Ct. at 1410, the ultimate outcome of a plea negotiation depends on whether the government is willing to agree to the plea the defendant is willing to enter. To prevail on that ground, a petitioner must therefore demonstrate a reasonable probability that the prosecution would have accepted, and the court would have approved, a deal that had no adverse effect on the petitioner's immigration status. Cf. id. ("reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented"); Lafler, 132 S. Ct. at 1385 ("the prosecution would not have withdrawn it in light of intervening circumstances"); United States v. Moya, 676 F.3d 1211, 1214 (10th Cir. 2012) ("He alleges no facts that would suggest that his attorney could have *successfully* negotiated a plea agreement . . . .") (emphasis added).

We conclude 1) that Kovacs has sufficiently shown that he could have negotiated a plea that would not have impaired his immigration status, and 2) that even if he could not, he

15

would have litigated an available defense.  Judge Kearse would decide this appeal on the second ground only, under Hill, and does not subscribe to our discussion of the first.

**1**

Kovacs has sustained the very considerable burden of establishing prejudice under the principles reviewed above. It is apparent from the transcript of the Rule 11 hearing that Kovacs' single-minded focus in the plea negotiations was the risk of immigration consequences.  The declaration submitted by Fink stated that the misprision of felony charge was settled on in the plea negotiation for the sole reason that Fink believed it would not impair Kovacs' immigration status--a view Fink conveyed to the prosecution. Kovacs has thus shown a reasonable probability that he could have negotiated a plea with no effect on his immigration status.  The Government's arguments on appeal are directed at contesting the applicable legal standard rather than the factual premise: the reasonable probability that the prosecution would have accepted a plea to an offense that would have left Kovacs' immigration status intact.

Consequently, we find that Kovacs has made a showing of prejudice based on his ability to negotiate an alternative plea.

**2**

Alternatively, Kovacs demonstrates prejudice under the standards set forth in <u>Hill</u>. Kovacs' petition alleges he would have litigated a meritorious statute of limitations defense. When a petitioner claims that he would have pursued an affirmative defense but for his lawyer's erroneous advice, "the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial."[5] <u>Hill</u>, 474 U.S. at 59. At sentencing, Kovacs requested a downward departure for extraordinary acceptance of responsibility on the basis that he waived this potential meritorious defense, and the district court granted it. The request itself demonstrates Kovacs' awareness of the defense prior to the plea becoming final. <u>See</u> Fed. R. Crim. P. 11(d)(2). More importantly,

---

[5] The Government argues that this language applies only when the unreasonable performance impairs the defense. This portion of <u>Hill</u>, though, merely provides examples of how its rule might apply, and does not suggest a limitation. <u>See</u> <u>Hill</u>, 474 U.S. at 59-60.

17

the district court's grant of Kovacs' request in the course of a conscientious and searching sentencing process implicitly acknowledged that the defense had weight. As a result, Kovacs has shown a reasonable probability that he would have proceeded to trial.

The Government contests the merit of the defense, citing a fax sent after Kovacs received the final payment in his fraudulent scheme, a document that is not in the present record. In any event, the question is not whether the defense would ultimately have been successful. Rather, the inquiry is whether the defense was viable and sufficiently promising that Kovacs would have litigated the defense to avoid immigration consequences. There is no doubt that (fax or no fax) the defense was sufficient trouble for the Government that Kovacs would have been foolish to forgo it at trial or as a means of softening the Government's position in plea bargaining.

**II**

The Government urges affirmance on the ground that the petition was untimely. The district court did not reach that issue; but we do, insofar as timeliness bears on possible prejudice to the Government.

No statute of limitations governs the filing of a *coram nobis* petition. See Foont, 93 F.3d at 79. At the same time, the petitioner must demonstrate "sound reasons" for any delay in seeking relief. Id. "The critical inquiry . . . is whether the petitioner is able to show justifiable reasons for the delay." Id. at 80.

Kovacs has supplied sufficient reasons to justify the delay. He avers that he has diligently pursued ways to reenter the country, but was unaware that a writ of *coram nobis* existed until October 2011--and contacted the Government soon thereafter. The Government is skeptical about the recent discovery of a writ so "ancient." Morgan, 346 U.S. at 506. When such a disputed issue of fact arises, we typically remand for a hearing. Under present circumstances, however, no hearing is needed because it is improbable that Kovacs (or whatever attorney he consulted) would have promptly thought about *coram nobis*, which is as arcane as it is ancient. The writ is an "extraordinary remedy" available only in rare cases. Id. at 511. Further, the Government does not suggest any tactical reason Kovacs would have delayed pursuit of the writ until 2011 if he had learned of it earlier. Lastly, the focus on the filing date of the petition insufficiently accounts for Kovacs' efforts

19

to negotiate for an agreed-upon motion in 2011. We conclude that Kovacs' petition was timely.

For these reasons, Kovacs has established his claim of ineffective assistance of counsel and satisfies the requirements for *coram nobis* relief. Therefore, we reverse and remand to the district court with instructions to issue the writ and vacate Kovacs' conviction.