Jack B. Weinstein, Senior United States District Judge *366 Contents
I. Introduction ...366
II. Facts...367
A. Background of Crime ...367
B. Immigration Advice...367
C. Concern for Deportation ...369
D. Deportation Warnings...370
III. Law ...371
A. Statute of Limitations Under 28 U.S.C. § 2255...371
B. Ineffective Assistance of Counsel...372
C. Writ of Error Coram Nobis ...373
IV. Application of Facts to Law...374
A. Statute of Limitations Under 28 U.S.C. § 2255...374
B. Ineffective Assistance of Counsel...374
C. Writ of Error Coram Nobis ...376
V. Conclusion ...376
I. Introduction
Three years after a guilty plea and sentencing, Petitioner Nekebwe Superville moves for a writ of habeas corpus or writ of error coram nobis, and to vacate his conviction, claiming that his attorney misled him about the immigration consequences of his conviction. His application is denied on substantive and procedural grounds.
Relying on recent precedent from the United States Supreme Court, Superville argues that incorrect advice from his attorney led him to believe that he would probably not be deported if he pled guilty, and that this advice induced him to plead guilty rather than stand trial. Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) ; Lee v. United States, --- U.S. ----, 137 S.Ct. 1958, 198 L.Ed.2d 476 (2017). The record and contemporaneous documentation does not support this claim. Consistent with standard practice, a magistrate judge and a district judge warned Superville that he could face deportation if he were to plead guilty. The mandatory nature of his deportation appeared in the terms of his plea agreement, which the court finds was read by him.
Even if Superville's attorney advised him incorrectly, the immigration consequences of his plea were explained to him before he was sentenced on his plea of guilty. About his guilt of the crimes he was sentenced for, there is no doubt.
The court held an evidentiary hearing on this motion. See Mot. Hearing Tr. ("Hr'g Tr."), Feb. 14, 2018, Feb.16, 2018. Three witnesses testified: Howard Greenberg, Superville's former attorney, Phillis Superville, the petitioner's mother, and the petitioner, Nekebwe Superville. Superville and Greenberg gave conflicting accounts of the immigration advice that Superville received before deciding to plead guilty.
The court does not credit Superville's testimony in light of the contemporaneous record. He did not demonstrate that he would have stood trial rather than plead *367 guilty had he been more forcefully advised of the serious risk of deportation he faced. The evidence against him was overwhelming. If he was found guilty-as he almost certainly would have been-he faced a mandatory ten-year term of imprisonment.
In reaching its conclusion, the court did not take into account the change in Department of Justice administration to increase deportation of criminals that occurred long after Superville pled guilty and the reality that this may have increased Superville's prospects of deportation after he was convicted. Both counsel agreed this was appropriate. Hr'g Tr. 147:20-148:11.
II. Facts
A. Background of Crime
On February 18, 2014, Superville pled guilty to one count of conspiring to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. § 846 and § 841 (b)(1)(A)(vii) ; and one count of conspiring to the transfer and delivery of United States currency involving the proceeds of narcotics trafficking, in violation of 18 U.S.C. § 1956(h) and § 1956(a)(1)(B)(i). See Feb. 18, 2014 Transcript ("Plea Tr."), ECF No. 117.
In 2009, Superville began working for a drug trafficking organization as a minor participant. Presentence Investigative Report ("PSR") at ¶¶ 8-9. He accepted a loan from one of the members of the organization to start a business. Id. at ¶ 12. The business failed and he was unable to repay his debts, which led him to his taking a bigger role in drug trafficking. Id.
His role in the drug conspiracy was significant. One of Superville's co-conspirators was arrested in September 2010 and Superville partially took over his role managing a FedEx account that the organization used to ship marijuana. Id. at ¶¶ 13-19. He traveled to Arizona several times in order to meet with suppliers on behalf of the organization and to facilitate its illegal activities. Id. Superville continued working with the drug trafficking organization for some years, taking a temporary absence in 2011 after a dispute with one of his co-conspirators. Id. He traveled to California in this time in search of new sources of supply. Id. at ¶ 17.
In early 2013, federal agents tracked Superville's co-conspirator during a trip to Arizona and observed him ship marijuana through FedEx. Id. at ¶¶ 20-21. Superville was arrested on May 8, 2013 at his home in Queens, New York and charged with intent to distribute 1,000 kilograms of marijuana and laundering $3,000,000 in drug proceeds. Id. at ¶¶ 28, 30.
Superville cooperated fully with the government following his arrest. See 5k.1 Letter, ECF No. 219. He testified at the trial of one of his co-conspirators, with whom he shared a close relationship. Id. at 3. The government wrote a 5k.1 letter for him, thus avoiding the ten-year minimum.
B. Immigration Advice
Superville retained a private defense attorney, Howard Greenberg, to represent him in his criminal case. Superville Aff. at ¶ 9, ECF No. 266, Ex. 7. He retained private counsel because he is not a United States citizen and feared deportation. Id. at ¶ 10.
According to an affirmation submitted prior to the hearing, Superville asked Greenberg whether a guilty plea would result in his deportation and Greenberg told him that "it would be something [they] would address if it came up later," and that Superville "should be 'okay" if [he] 'kept [his] head down' and 'stayed out of trouble.' " Id. at ¶ 13.
*368 At the hearing, Superville testified that the warning given by Greenberg was stronger than that stated in his affirmation. Greenberg, Superville testified, told him that he "wouldn't get deported" if he did not spend time in prison and stayed out of future trouble. Hr'g. Tr. 97:2-22. This testimony is not believed by the court. His attorney was highly experienced and did not promise non-deportation. At the least, Superville was informed that he was eligible for deportation upon conviction.
Superville testified to having issues with Greenberg's representation apart from his immigration advice. Superville thought that Greenberg was "pushing [him] to cooperate"; apparently, the first time they discussed cooperation was after a court appearance with an Assistant United States Attorney present. Id. 93:12-94:16. Because of these concerns, Superville decided to meet with another criminal defense attorney for a second opinion on his case. Id. 103:5-14. Superville asked this attorney about the immigration consequences of his case, and was counseled to seek the advice of an immigration attorney. Id. 104:5-10, 139:7-140:15.
Superville took this advice and sought the opinion of an immigration attorney. Id. He stated in his affirmation:
As being deported was my greatest fear, I went to an immigration attorney on my own and met with my mother's immigration attorney, who she had retained to help file her United States citizenship papers. He told me that if I went to trial, got convicted, and got jail, I would definitely be deported. However, he said if I took a plea, I would very likely not get deported if I didn't go to jail and then stayed out of future trouble.
Superville Aff. at ¶ 16. Superville claims he recounted this advice to Greenberg, who "just nodded" as he listened. Id. at ¶ 17. Greenberg disputes hearing about the advice from Superville's immigration attorney. Hr'g Tr. 14:10-16.
Superville's mother, Phillis Superville, in part corroborated her son's account. She testified that while speaking to Greenberg before Superville's bond hearing he told her "not to worry about" immigration consequences because he was an immigration attorney as well. Hr'g. Tr. 72:15-20. They spoke about immigration consequences at another time:
I was concerned about my son pleading guilty, and how it would affect his immigration status. And Mr. Greenberg said to me that he needs to-once my son stays out of trouble, he should be okay and told me not to worry again. And he said all he has to do is keep a low profile.
Id. 73:16-23.
Howard Greenberg, Esq. told a different story. Greenberg testified that he was retained by Superville's mother and immediately sought to get Superville bailed out of jail. Hr'g. Tr. 5:8-13. Superville was primarily concerned with getting out of jail. Id. 7:13-19. About the immigration advice he gave, Greenberg stated:
I told him that-I never told him he would be deported as a result of the plea. I told him that he could be deported as a result of the plea. And I say that because nobody can predict any such outcome. I told him that if he was removed from the country, he might not be allowed to return. And I told him if he ever were able to return, he might well be denied naturalization.
Id. 12:22-13-3. Greenberg also testified:
I told him if everything went the way we prayed and hoped, it might go that the best thing he can do is just live his life and keep his head down. And he asked *369 me, what do you mean by keep my head down? And I said, For God's sake, don't get re-arrested for anything because I know that the immigration folks are in the habit of sticking their nose into the business of every new arrestee wherever they are incarcerated and try to determine what that person's status is in this country.
Id. 14:17-25.
Greenberg characterized Superville's claim in his affidavit as Greenberg having told him not to worry about deportation as a "bald-faced lie." Id. 16:11-17. He claims he told Superville that they could discuss deportation if it ever arose, but this was in addition to telling Superville that he could be deported for the offense. Id. 16:18-18:4. Greenberg's testimony on these points suggests that Superville was in fact misled. The statute effectively provides for mandatory deportation because Superville pled guilty to an aggravated felony. See 8 U.S.C. § 1228(c) ("An alien convicted of an aggravated felony shall be conclusively presumed to be deportable from the United States."); Lee v. United States, --- U.S. ----, 137 S.Ct. 1958, 1963, 198 L.Ed.2d 476 (2017) ("A noncitizen convicted of [an aggravated felony] is subject to mandatory deportation"). No apparent defense to deportation based on a plea existed.
C. Concern for Deportation
Superville had sound reason to fear deportation. He had not been to Trinidad and Tobago, his country of citizenship, since he was five years old. Superville Aff. at ¶ 5. He has lived in the United States for the entire time since he left Trinidad; his mother, fiancé, and two daughters live in the United States. Id. at ¶ 5-7. He showed concern for his deportation by deciding to seek the opinion of an independent defense counsel and an immigration attorney. Hr'g Tr. 99:16-18. "Avoiding deportation was the most important part of [the criminal] process to [Superville]." Superville Aff. at ¶ 22.
Superville says he "didn't believe that the evidence the government had against [him] was very strong," but his attorney "encouraged [him] to cooperate with the government and plead guilty to the charges." Superville Aff. at ¶¶ 11-12; see also Hr'g Tr. 92:22-93:1. The case against him, in his opinion, was only "flights and some tape recordings." Id. 93:2-5. The tape recordings consisted of conversations between Superville and his co-conspirators discussing drug trafficking. Id. 133:12-14. The government also produced in discovery FedEx account records showing drug shipments between members of the conspiracy. Id. 133:21-23. The evidence of guilt was in fact overwhelming.
Pleading guilty, Superville believed, was his "best chance to remain in the United States" based on the advice of his criminal attorney. Id. at ¶ 23. He stated that if "there was a chance that [he] wouldn't be deported by going to trial, [he] would have taken it"; "had [he] known that pleading guilty to these charges would have automatically triggered [his] deportation, [he] would have absolutely chosen to have gone to trial instead of pleading guilty and cooperating with the government." Id. at ¶¶ 21-22.
Greenberg, however, described Superville's criminal case as "dead." Hr'g Tr. 9:18-20. Based on his experience as a criminal defense attorney, he believed the evidence against Superville was overwhelming. Id. 9:21-10:14. Superville and his family were also threatened by one of Superville's codefendants in the case, and this was a significant factor leading Superville to cooperate. Id. When Greenberg first met with Superville "[h]is number one concern, to the exclusion of everything *370 else" was to be released from jail. Id. 7:13-19.
D. Deportation Warnings
On February 18, 2014, Superville pled guilty and signed a cooperation agreement. See Plea Tr. This agreement contained the following paragraph outlining the immigration consequences of his guilty plea:
The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses to which the defendant is pleading guilty. Indeed, because the defendant is pleading guilty to 21 U.S.C. § 846 and 18 U.S.C. § 1956(h), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the defendant's plea may entail, even if the consequence is the defendant's automatic removal from the United States.
Cooperation Agreement ¶ 10 (emphasis supplied), ECF No. 270, Ex. 3. At the plea hearing while under oath, Superville acknowledged reading the cooperation agreement thoroughly and discussing it with his attorney. Plea Tr. 13:2-15.
Greenberg testified that he reviewed the entire agreement with Superville, including the paragraph about Superville's immigration consequences, Hr'g Tr. 33:8-16; this testimony is credited as part of the routine of any experienced practicing attorney.
Superville claims that he never read the cooperation agreement. Id. 108:17-19. He testified that Greenberg explained the agreement to him at a high level, but that he did not explain the paragraph that outlined the immigration consequences of his plea. Id. 108:17-111:25. Superville signed the agreement, but claimed that he did not read the line directly above his signature affirming that he read and understood the agreement. Id. 112:22-24. This testimony of not reading the plea agreement is not credited. Petitioner was intelligent and concerned about the issue. His explanation about why he did not read it was not persuasive. See Hr'g Tr. 130:21-131:15.
Superville was advised by the magistrate judge at his plea hearing that he would face immigration consequences.
Magistrate Judge: And last, as I have alluded to, if you are not a United States citizen, a conviction for the charges that you will be pleading guilty to carries heavy immigration consequences. Are you a United States citizen?
Superville: No.
Magistrate Judge: Now as a result of pleading guilty, you could be subject to removal from the United States and denied citizenship and denied permission to be re-admitted to the United States. Do you understand?
Superville: Yes.
Plea Tr. 21:10-21 (Emphasis supplied).
Several months later Superville appeared before this court to be sentenced. Superville was again advised of the fact that he might suffer immigration consequences, including deportation, as a result of his plea.
Court: Of what country are you a citizen?
Superville: Trinidad and Tobago.
*371 Court: Do you understand that your plea in this case may result in your deportation?
Superville: Yes.
Court: Have you explained the collateral disabilities of a plea?
Defense Counsel: We've gone over everything.
Court: You understand how serious this is?
Superville: Yes.
Court: With respect to disabilities such as licensing, schooling and the like?
Superville: Yes.
Court: Are you satisfied with your attorney?
Superville: Yes.
Sentencing Transcript ("Sentencing Tr.") 3:19-4:10, ECF No. 270, Ex. 6, Oct. 8, 2014 (emphasis supplied). Superville agreed with the court that he had testified at the trial of his codefendant and his testimony indicated guilt. Id. 6:2-10. He reaffirmed that he wished to plead guilty. Id.
Superville claims that he based his guilty plea on the advice given to him by his criminal defense attorney despite the repeated warnings by the court. Superville Aff. at ¶ 19. He claims to have only become aware of the immigration consequences of his conviction after immigration officers arrested him on July 18, 2017 when he had only one month left on his term of supervised release. Id. at ¶¶ 26, 29. He filed this petition to vacate his conviction on October 5, 2017.
III. Law
Superville files this motion for a writ of habeas corpus under 28 U.S.C. § 2255, or, alternatively, for a writ of error coram nobis, to vacate his conviction on the grounds that his counsel was constitutionally ineffective.
A. Statute of Limitations Under 28 U.S.C. § 2255
The statute governing writs of habeas corpus stemming from federal criminal proceedings, codified at 28 U.S.C. § 2255, contains a one-year statute of limitations. The limitations period runs from the latest of:
(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
28 U.S.C. § 2255(f) (emphasis supplied). When no appeal is taken, under subsection (1) a "judgment becomes final when the time for filing a direct appeal expires." Moshier v. United States , 402 F.3d 116, 118 (2d Cir. 2005).
Superville filed this petition several years after the time for appeal expired. He relies on subsection (4). " Section 2255(4) is not a tolling provision .... Rather, it resets the limitations period's beginning date, moving it from the time when the conviction became final, see § 2255(1), to the later date on which the particular claim accrued." Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000). The relevant inquiry is whether "a duly *372 diligent person in petitioner's circumstances would have discovered" the facts leading to the claim. Id.
Several district courts have considered the applicability of this section when criminal defendants claim that their convictions should be vacated because they were not adequately informed of the immigration consequences of a guilty plea. Most have held that a duly diligent petitioner would discover an ineffective claim if and when he was advised of possible deportation during a plea colloquy. See, e.g., Salama v. United States, No. 05 CV 1257 (SJ), 2005 WL 1661830, at *4 (E.D.N.Y. July 15, 2005) ; United States v. Deptula , No. 5:10-CR-82-6, 2016 WL 7985815, at *7 (D. Vt. Oct. 13, 2016), report and recommendation adopted, No. 5:10-CR-82-6, 2017 WL 384681 (D. Vt. Jan. 26, 2017) ; but see Bawaneh v. United States, No. CR-04-1134 CAS, 2011 WL 1465775, at *4 (C D. Cal. Apr. 18, 2011).
B. Ineffective Assistance of Counsel
The Sixth Amendment guarantees the right to the effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Strickland announced the now-familiar two-part test for determining whether an attorney's performance is constitutionally adequate. To establish an ineffective assistance of counsel claim, a petitioner must show that (1) the attorney's performance "fell below an objective standard of reasonableness"; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688, 694, 104 S.Ct. 2052.
Two recent Supreme Court cases have addressed both of Strickland's prongs in the immigration context. Padilla v. Kentucky spoke to the first prong holding that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." 559 U.S. 356, 367, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). To some individuals, "[preserving [their] right to remain in the United States may be more important ... than any potential jail sentence." Id. (quoting INS v. St. Cyr, 533 U.S. 289, 323, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) ). Although immigration law can be complex, "when the deportation consequence is truly clear, ... the duty to give correct advice is equally clear." Id. at 369. Padilla left open how the second prong of Strickland applies to cases of this sort.
Last term, Lee v. United States, answered the question of how the Strickland prejudice prong applies when a criminal defense attorney gives incorrect immigration advice. --- U.S. ----, 137 S.Ct. 1958, 198 L.Ed.2d 476 (2017). In Lee, as in the instant case, the petitioner pled guilty ostensibly relying on incorrect immigration advice and had to show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 1965 (quoting Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ). The Court declined to adopt a per se rule "that a defendant with no viable defense cannot show prejudice from the denial of his right to trial," because the proper focus of the inquiry is "on a defendant's decisionmaking, which may not turn solely on the likelihood of conviction after trial." Id. at 1966.
Applying the law to the "unusual circumstances" of Lee's case, the Court concluded, "that Lee ha[d] adequately demonstrated a reasonable probability that he would have rejected the plea had he known that it would lead to mandatory deportation." Id. at 1967. Several factors supported the Court's decision: (1) both Lee and his attorney testified in a hearing on the habeas petition that Lee would have *373 faced trial had he known that he would have been deported; (2) Lee had strong family connections to the United States where he had lived for three decades; (3) when he was warned of potential immigration consequences by the district judge, he responded " 'I don't understand,' and turned to his attorney for advice ... [and] [o]nly when Lee's counsel assured him that the judge's statement was a 'standard warning' was Lee willing to proceed to plead guilty." Id. at 1968.
Based on these factors, the Court concluded:
We cannot agree that it would be irrational for a defendant in Lee's position to reject the plea offer in favor of trial. But for his attorney's incompetence, Lee would have known that accepting the plea agreement would certainly lead to deportation. Going to trial? Almost certainly. If deportation were the "determinative issue" for an individual in plea discussions, as it was for Lee; if that individual had strong connections to this country and no other, as did Lee; and if the consequences of taking a chance at trial were not markedly harsher than pleading, as in this case, that "almost" could make all the difference. Balanced against holding on to some chance of avoiding deportation was a year or two more of prison time. Not everyone in Lee's position would make the choice to reject the plea. But we cannot say it would be irrational to do so.
Id. (emphasis in original).
The Supreme Court warned that courts "should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Id. at 1967. "[C]ontemporaneous evidence to substantiate a defendant's expressed preferences" should instead be the touchstone. Id. A lack of contemporaneous evidence showing that the defendant would have rejected a plea if he misunderstood the immigration consequences of it is grounds for denying a motion under the Strickland prejudice prong. See United States v. Seepersad , 674 Fed.Appx. 69, 71 (2d Cir. 2017), cert. denied, --- U.S. ----, 138 S.Ct. 554, 199 L.Ed.2d 435 (2017) (denying a claim under Strickland's prejudice prong where "during the plea colloquy the district court told [the defendant] his guilty plea would "provide the basis for the Immigration and Naturalization Service to deport you. You've got to understand that' " and the defendant "twice indicated that he understood").
C. Writ of Error Coram Nobis
A writ of error coram nobis may be "issued pursuant to the All Writs Act, 28 U.S.C. § 1651(a), where 'extraordinary circumstances are present.' " Foont v. United States, 93 F.3d 76, 78 (2d Cir. 1996) (quoting Nicks v. United States, 955 F.2d 161, 167 (2d Cir.1992) ). To qualify for the writ, a petitioner "must demonstrate that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." Id. at 79 (internal citations omitted).
"[I]neffective assistance of counsel is one ground for granting a writ of coram nobis. " Kovacs v. United States, 744 F.3d 44, 49 (2d Cir. 2014). Superville's request for this writ is based upon the ineffective assistance of his trial counsel, and is governed by the Strickland standard. See supra Section III(A).
Unlike the writ of habeas corpus, "[n]o statute of limitations governs the filing of a coram nobis petition."
*374 Kovacs, 744 F.3d at 54. But, a petitioner seeking the relief must "demonstrate 'sound reasons' for any delay in seeking relief." Id. ; cf. supra Section III(A).
IV. Application of Facts to Law
A. Statute of Limitations Under 28 U.S.C. § 2255
Superville's habeas petition is barred by the statute of limitations. His timeliness argument relies on 28 U.S.C. § 2255(f)(4), which requires a petitioner to file one year from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Id. Even if Superville actually discovered that he would be deported when he was detained by immigration officers on July 18, 2017, Superville Aff. at ¶¶ 26, 29, he could have, and would have, with minimal diligence, discovered the high probability of his deportation much earlier.
Superville's cooperation agreement states in relatively clear terms that he would almost certainly be deported if he pled guilty. It states that his deportation is "presumptively mandatory" and that he "affirms that the [he] wants to plead guilty regardless of any immigration consequences that [his] plea may entail, even if the consequence is [his] automatic removal from the United States" Cooperation Agreement at ¶ 10 (emphasis supplied). Even if Superville was relying on poor immigration advice from his attorneys, this agreement should have disabused him of his mistaken belief. Superville claims that he did not read this agreement, but his actual knowledge is not the relevant inquiry under 28 U.S.C. § 2255(f)(4). The effect of the word "presumptively" was either known to him or he should have asked to have it explained in view of his concern about deportability.
The magistrate judge, at his plea colloquy, and this court, at his sentencing hearing, further advised Superville that his guilty plea could lead to deportation. The magistrate judge told Superville that "a conviction for the charges that you will be pleading guilty to carries heavy immigration consequences Plea Tr. 21:10-21 (emphasis supplied). This court at sentencing, before accepting his plea, asked Superville whether he "underst[ood] that [his] plea in this case may result in [his] deportation." Sentencing Tr. 3:19-4:10. He responded, "yes." Id.
The only case this court is aware of to have reached a different conclusion under similar circumstances is Bawaneh v. United States, No. CR-04-1134 CAS, 2011 WL 1465775 (C.D. Cal. Apr. 18, 2011). This non-binding case is distinguishable. There the court's deportation warning was highly equivocal-"it is at least conceivable ... that the guilty plea may lead to immediate deportation proceedings"-and the attorney's advice was clear-"his attorney informed him that even if he were deported, he would have a strong argument at canceling the deportation." Id. at *4 (emphasis added). Superville, by contrast, was given three objective warnings, two by the court and one in his cooperation agreement. The number and strength of the warnings he received would have caused a duly diligent person to make a further inquiry into the possibility of deportation. In fact, he consulted two other attorneys on this point before his guilty plea.
Because Superville could have discovered his claim at the latest at his sentencing in October 2014 and his petition is brought more than a year after that time, it is untimely.
B. Ineffective Assistance of Counsel
The court takes no position on whether the advice given by Superville's criminal defense attorney, Howard Greenberg, *375 falls below an objective standard of reasonableness. Superville cannot claim prejudice under the second prong of Strickland. He cannot show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Lee v. United States, --- U.S. ----, 137 S.Ct. 1958, 1965, 198 L.Ed.2d 476 (2017).
The court does not credit several aspects of Superville's testimony. See supra Part II. The contemporaneous evidence leads this court to conclude that he did in fact know that there was a strong possibility of deportation when he pled guilty and that he cannot show that a stronger warning would have led him to stand trial. Even if the court credited the entirety of Superville's testimony, the result would remain unchanged.
Two judges informed Superville that his conviction would carry immigration consequences. See supra Section IV(A). Both times he affirmed under oath that he understood this. It is this court's invariable practice, and the practice of magistrates in this district, to inform criminal defendants when pleading guilty that they could face deportation if they are not citizens. If this warning is to have meaning, courts must be able to rely on the fact that defendants take this warning seriously, and speak truthfully under oath when they acknowledge that they understand the immigration consequences of their plea.
That is not to say that these warnings will be sufficient in all cases. In Lee, for example, the defendant received a warning from the district court prior to it accepting his plea. Upon receiving this warning, he responded " 'I don't understand,' and turned to his attorney for advice ... [and] [o]nly when Lee's counsel assured him that the judge's statement was a 'standard warning' was Lee willing to proceed to plead guilty." Id. at 1968. Contemporaneous evidence showing that the defendant did not understand the warning or was misled is necessary in most cases. Id. at 1967 ("Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies."); cf. Kovacs v. United States, 744 F.3d 44, 53 (2d Cir. 2014) ("It is apparent from the transcript of the Rule 11 hearing that Kovacs' single-minded focus in the plea negotiations was the risk of immigration consequences.").
In the instant case, there is no contemporaneous evidence that Superville did not understand that he was likely to face deportation. Unlike the petitioner in Lee, Superville affirmed under oath that he did understand consequences-without equivocation. The last time that Superville claims to have spoken to his attorney about immigration consequences is a few weeks before the plea hearing. Three times after that he learned that he could in fact be deported.
Superville was facing a ten-year mandatory minimum sentence if he did not cooperate with the government and had been threatened by a codefendant. It is undisputed that Superville understood that he "could" be deported as a result of his guilty plea. Hr'g Tr. 134:20-23. While the extent of his understanding is not clear, that he did not hesitate to plead guilty after receiving judicial warnings significantly undercuts his claim that he would have stood trial rather than plead guilty and face a ten-year mandatory minimum and deportation. In Lee, by contrast, the Supreme Court characterized Lee's "consequences of taking a chance at trial [as] not markedly harsher than pleading" because it was only a "year or two more of prison time"; not a decade. Id. at 1968.
The court also notes, without deciding as an independent ground for denying the *376 motion, that there is a significant causation issue in this case. Superville was separately advised, apparently incorrectly, by an attorney specializing in immigration law. To the extent that he relied on this advice, it undercuts his argument that it was Greenberg's advice that induced him to plead guilty. It does not seem that the conduct of an attorney who has no role in the criminal case, under such circumstances that exist in this case, is cognizable under the Strickland standard.
Superville cannot show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Lee v. United States, --- U.S. ----, 137 S.Ct. 1958, 1965, 198 L.Ed.2d 476 (2017).
C. Writ of Error Coram Nobis
Because Superville cannot show that he was constitutionally deprived of the effective assistance of counsel, the writ of error coram nobis is denied. Superville cannot demonstrate sound reason for his delay in bringing this petition. See supra Section IV(A).
V. Conclusion
Superville's motion for a writ of habeas corpus or a writ of error coram nobis and to set aside his conviction is denied.
The court has changed the warning that it gives to non-citizen criminal defendants in a case such as this to "you should assume that you will be deported after conviction by plea or trial."
Superville shall remain in the United States until he has fully exhausted his right to appeal this order.
SO ORDERED.