RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0221p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DAYNEL L. RODRIGUEZ-PENTON,

> *Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

> *Respondent-Appellee*.

┐
│
│
│
> No. 15-6306
│
│
│
┘

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
Nos. 3:11-cr-00130-1; 3:14-cv-00547—Charles R. Simpson, III, District Judge.

Argued:  May 2, 2018

Decided and Filed:  October 2, 2018

Before:  DAUGHTREY, STRANCH, and THAPAR, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Doron M. Kalir, CLEVELAND-MARSHALL COLLEGE OF LAW, Cleveland, Ohio, for Appellant.  Terry M. Cushing, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee.  **ON BRIEF:**  Doron M. Kalir, CLEVELAND-MARSHALL COLLEGE OF LAW, Cleveland, Ohio, for Appellant.  Terry M. Cushing, Candace G. Hill, Russell M. Coleman, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee.

STRANCH, J., delivered the opinion of the court in which DAUGHTREY, J., joined. THAPAR, J. (pp. 11–18), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

JANE B. STRANCH, Circuit Judge.   Petitioner Daynel L. Rodriguez-Penton, a lawful permanent resident from Cuba, appeals the district court's denial of his motion to vacate his sentence under 28 U.S.C. § 2255.  He argues that his counsel performed deficiently by failing to warn him of the adverse immigration consequences of pleading guilty and that he was prejudiced by this failure.   The district court denied his motion, relying on the standard for ineffective assistance of counsel claims set forth in *Hill v. Lockart*, 474 U.S. 52 (1985).   But the legal landscape for such claims has changed in material ways since *Hill*, especially in the context of non-citizens faced with criminal charges.  Because the district court applied the wrong analytical framework, we **REVERSE** and **REMAND** for further proceedings consistent with this opinion.

## I.  BACKGROUND

Rodriguez-Penton, now twenty-nine years old, moved from Cuba to the United States with his parents when he was fifteen.  He has lived in Louisville, Kentucky since his arrival and is a permanent resident in possession of a green card.   In 2011, the Government indicted Rodriguez-Penton and his parents on a single count of conspiracy to distribute and possess Oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C).   The Government dismissed the charges against Rodriguez-Penton's parents approximately six months after indictment.

Rodriguez-Penton was detained pending trial and represented by retained counsel William M. Butler.  Rodriguez-Penton cooperated with the Government at first, but eventually stopped, in large part because he feared for his family's safety.   The Government offered Rodriguez-Penton at least two separate plea deals in the year after his arrest, including one verbal offer and one written offer for a six-year sentence.  Rodriguez-Penton eventually moved for re-arraignment.  At the re-arraignment hearing in October 2012, he entered an open guilty plea to the single charge in the indictment.

Rodriguez-Penton's Cuban citizenship arose at three points during the plea hearing. First, when Rodriguez-Penton mentioned his Cuban citizenship, the district court responded that there was no need to review the civil rights one forfeits by pleading guilty because they did not apply to non-citizens. Second, the district court inquired whether, due to Rodriguez-Penton's citizenship, there would be an early sentencing. The parties answered in the negative. Third, when asking about releasing Rodriguez-Penton from custody pending trial, the district court asked if "there is any legal reason your client should be released from custody, or is there an [Immigration and Customs Enforcement] detainer on him?" Butler responded "no," although it is not clear whether he was saying no legal reason existed or no detainer existed. At no point during the plea hearing did the district court advise Rodriguez-Penton that pleading guilty might have adverse immigration consequences.

In March 2013, the district court sentenced Rodriguez-Penton to a prison term of 121 months, to be followed by four years of supervised release.[1] The sentencing court mentioned that it did not know "if this conviction would result in deportation" when discussing the supervised release portion of Rodriguez-Penton's sentence. Rodriguez-Penton alleges that he was unaware of the risk of deportation until after sentencing. He learned of the risk when he had his "first appointment" with his prison counselor, who gave him "a sheet of paper where it said that [he] could possibly be deported."[2]

Rodriguez-Penton filed a direct appeal while still represented by Butler in which he argued that his guilty plea was not knowing and voluntary because the district court failed to advise him of the risk of deportation. He also argued that the evidence did not support the drug

---

[1]Rodriguez-Penton's sentence was subsequently lowered to 97 months of imprisonment for reasons unrelated to this appeal.

[2]The sheet of paper to which Rodriguez-Penton referred might have been the April 11, 2012, Immigration Detainer sent by the Department of Homeland Security (DHS) to the U.S. Marshals for the Western District of Kentucky. Although the detainer is dated April 11 and instructs that Rodriguez-Penton be notified of its existence, the record neither confirms when it was sent to the Marshals nor indicates that Rodriguez-Penton received a copy. The record is also silent as to whether anyone else involved in the case, including either the Assistant U.S. Attorney or Rodriguez-Penton's attorney, was aware of the detainer's existence. No one mentioned the detainer even though Rodriguez-Penton's citizenship status arose at several points during the plea entry and sentencing hearings, and no one mentioned it at the plea hearing in response to the district court's specific question.

quantities attributed to him at sentencing.  This court rejected both arguments.  *United States v. Rodriguez-Penton*, 547 F. App'x 738 (6th Cir. 2013).

Rodriguez-Penton then filed a § 2255 motion to vacate, set aside, or correct his sentence. The district court eventually appointed counsel and a magistrate judge scheduled an evidentiary hearing where Rodriguez-Penton and Butler both testified.  Butler estimated that he met with Rodriguez-Penton fifteen times during the year between Rodriguez-Penton's arrest and plea, although Rodriguez-Penton said they met closer to ten times.  Because Rodriguez-Penton does not speak English, a Spanish interpreter was present during the majority of these meetings.  An interpreter was also present at all relevant hearings.

Based on the testimony and oral argument at the evidentiary hearing, the magistrate judge issued Findings of Fact and Conclusions of Law.  The magistrate judge described Butler's performance as follows:  "[H]e merely told Rodriguez-Penton that, based on Butler's own experience, and what several immigration attorneys had told Butler, [Rodriguez-]Penton did not have to worry about deportation because the Government would not return him to Cuba."  The record confirms that Butler was not alone in reaching this conclusion—the Government also noted that Cuban defendants are rarely subject to deportation.  Yet neither Butler nor the Government cited any authority in support of this position.  The magistrate judge then noted that "Butler conceded on cross-examination that he did not recall ever telling Rodriguez-Penton that deportation nonetheless was a possibility."  This differed from Rodriguez-Penton's testimony that Butler "never discussed the subject of deportation, nor did they ever discuss the impact of his status as a Cuban national lawfully present in the United States."

Rather than reconcile the conflicting testimony, the magistrate judge presumed "to the benefit of Rodriguez-Penton that attorney Butler's performance was deficient."  He concluded that Rodriguez-Penton's claim of ineffective assistance of counsel failed on the prejudice prong because Rodriguez-Penton testified unequivocally that he "would not have gone to trial, even if he could not have negotiated a better plea arrangement than the open plea of guilty that he previously chose to enter."  Absent a showing of prejudice, the magistrate judge held, Rodriguez-Penton could not prevail on his § 2255 petition.  The district court adopted the

magistrate judge's findings over Rodriguez-Penton's objections, denied the § 2255 motion, and dismissed the case with prejudice.

Rodriguez-Penton filed a timely notice of appeal and moved this court for a Certificate of Appealability (COA). This court granted his request after finding that "Rodriguez-Penton has arguably made a substantial showing that his attorney's performance was deficient and that he was actually prejudiced by counsel's alleged error." More specifically, the COA stated:

> Rodriguez-Penton has arguably shown that, had he been advised that he could be deported, he might have accepted a similar plea offer especially if it contained a non-deportation clause, particularly in light of the prosecutor's acknowledgement that citizens of Cuba are generally not deported following a guilty plea. Therefore, Rodriguez-Penton has made a substantial showing that counsel's error prejudiced him because, even though he insisted on not going to trial, the error may have affected the outcome of the plea process.

With this background in mind, we turn to Rodriguez-Penton's arguments on appeal.[3]

## II. ANALYSIS

### A. Standard of Review

This court reviews a district court's denial of a § 2255 motion de novo. *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006). The reviewing court "will accept the district court's factual findings unless they are clearly erroneous." *McPhearson v. United States*, 675 F.3d 553, 558 (6th Cir. 2012). The de novo review standard also applies to a claim of ineffective assistance of counsel, which is a mixed question of law and fact. *Id.* at 559.

### B. Ineffective Assistance of Counsel

The basic contours of ineffective-assistance-of-counsel claims are well defined. To prevail on a claim that he was denied effective assistance, Rodriguez-Penton must meet the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984), and subsequently tailored to the guilty-plea context, *see Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012). "The performance

---

[3]After issuing the COA, this court granted the Government's request to hold the case in abeyance pending the Supreme Court's decision in *Lee v. United States*, 137 S. Ct. 1958 (2017). The parties updated their briefs after the decision in *Lee*.

prong of *Strickland* requires a defendant to show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 163 (citation and internal quotation marks omitted). The prejudice prong requires a defendant to show that there is a reasonable probability the outcome of the plea process would have been different had he received competent advice. *Id.*

Here, the district court assumed deficient performance, and rightly so. Under either version of the facts, that of Butler or that of Rodriguez-Penton, Butler's conduct was objectively unreasonable. Counsel has an obligation to "advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010) (footnote omitted). This obligation is not met if counsel either fails to mention the risk of deportation or specifically discounts such a risk. *See id.* at 359, 368–69 (noting that Padilla's counsel told him he did "not have to worry about immigration status since he had been in the country so long," and finding that advice to be deficient); *see also Lee v. United States*, 137 S. Ct. 1958, 1964 (2017) ("The Government concedes that Lee's plea-stage counsel provided inadequate representation when he assured Lee that he would not be deported if he pleaded guilty."). We therefore agree that counsel's performance was deficient.

The district court's resolution of *Strickland*'s prejudice prong, however, requires more attention. The prejudice inquiry asks whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In answering this inquiry in the negative, the district court relied on *Hill v. Lockhart*, 474 U.S. 52 (1985), and its progeny. *Hill* extended Sixth Amendment ineffective-assistance-of-counsel claims to the guilty-plea context, but held that *Strickland* prejudice requires a showing of "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Recent Supreme Court authority has expanded *Hill*'s holding in material ways. In *Missouri v. Frye*, the Supreme Court considered how to address prejudice where "[t]he challenge [wa]s not to the advice pertaining to the plea that was accepted but rather to the course of legal representation that preceded it with respect to other potential pleas and plea offers." 566 U.S. 134, 141–42 (2012). *Frye* held that, "[t]o establish prejudice in this instance, it is

necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* at 147. Specifically distinguishing *Hill*, the Supreme Court explained that "*Hill* was correctly decided and applies in the context in which it arose. *Hill* does not, however, provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations." *Id.* at 148. *Frye* thus clarified that individuals who allege ineffective assistance of counsel during the plea process may satisfy the prejudice prong even without a showing that they would have gone to trial were it not for counsel's deficient performance.

Since *Frye*, Supreme Court authority and some persuasive caselaw from our sister circuits have further illuminated how to demonstrate prejudice in the guilty-plea context, and specifically as it relates to adverse immigration consequences. *Lee*, for example, is instructive. Although that case, like *Hill*, involved a defendant who claimed that counsel's deficient performance deprived him of the opportunity to proceed to trial, the Supreme Court nevertheless confirmed that a defendant may be prejudiced when his counsel's errors deprived him of the opportunity to make a fully informed choice during the plea process: "[W]here we are instead asking what an individual defendant would have done, the possibility of even a highly improbable result may be pertinent to the extent it would have affected his decisionmaking." 137 S. Ct. at 1967 (footnote omitted). *Lee* therefore indicates that prejudice may lie where a petitioner demonstrates that counsel's deficient performance infected his decisionmaking process, and thus undermines confidence in the outcome of the plea process. *Id.*

One question left open by *Lee* and raised by Petitioner is whether Rodriguez-Penton may demonstrate a reasonable probability of a different outcome by showing that he would have negotiated a plea deal that did not carry adverse immigration consequences. *See id.* at 1966 n.2 ("Lee also argues that he can show prejudice because, had his attorney advised him that he would be deported if he accepted the Government's plea offer, he would have bargained for a plea deal that did not result in certain deportation. Given our conclusion that Lee can show prejudice based on the reasonable probability that he would have gone to trial, we need not reach this argument."). The five circuits that have addressed this question have all concluded that such a showing would satisfy *Strickland*'s prejudice prong. *See, e.g.*, *United States v. Aguiar*,

894 F.3d 351, 362 (D.C. Cir. 2018) (remanding for an evidentiary hearing on prejudice and noting that "[t]he Supreme Court did not suggest in *Lee* that a defendant must hypothesize his counsel's advice might be erroneous and state contemporaneously that his plea decision would differ if that were so"); *United States v. Swaby*, 855 F.3d 233, 243 (4th Cir. 2017) ("Swaby has demonstrated a reasonable likelihood that, but for his counsel's erroneous advice, he could have negotiated a different plea agreement. As a result, [counsel]'s deficient performance prejudiced Swaby's defense."); *United States v. Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir. 2015) ("A petitioner may demonstrate that there existed a reasonable probability of negotiating a better plea by identifying cases indicating a willingness by the government to permit defendants charged with the same or a substantially similar crime to plead guilty to a non-removable offense."); *DeBartolo v. United States*, 790 F.3d 775, 779 (7th Cir. 2015) (noting that the petitioner "could have tried to negotiate a different plea deal for an offense that does not make deportation mandatory"); *Kovacs v. United States*, 744 F.3d 44, 52 (2d Cir. 2014) ("[A] petitioner must therefore demonstrate a reasonable probability that the prosecution would have accepted, and the court would have approved, a deal that had no adverse effect on the petitioner's immigration status.").

We find the logic of these opinions sound, and we now likewise hold that Rodriguez-Penton may demonstrate prejudice if he can show that, had he known about the risk of adverse immigration consequences, he would have bargained for a more favorable plea. Rodriguez-Penton may make this showing in any number of ways, such as by showing similar plea agreements that were reached by others charged with the same crime. *See Rodriguez-Vega*, 797 F.3d at 788. And, under *Lee*, he can still show prejudice by demonstrating that, if properly advised, he would have gone to trial or his decisionmaking process would have been different. 137 S. Ct. at 1967. But no matter the route he takes, Rodriguez-Penton must still end up at the same place: he must present evidence sufficient to undermine confidence in the outcome of the plea-negotiation process. *Cf. id.* (cautioning against relying on "post hoc assertions" about how a defendant would have pleaded).

Because the district court looked only to *Hill*, it applied an incomplete analytical framework to Rodriguez-Penton's prejudice arguments. For a case like this one—where a

criminal defendant risks deportation by pleading guilty and his counsel fails to so advise him—*Hill* does not encompass all the methods of satisfying *Strickland*'s prejudice prong. In light of the legal developments since *Hill* and today's holding, we think a remand for additional proceedings is appropriate. *See Rodriguez v. United States*, 730 F. App'x 39, 44 (2d Cir. 2018) (remanding to "the district court to develop a fuller record concerning the issue of prejudice" after noting that, "[o]n the present record and under the circumstances, we cannot determine whether Rodriguez would have opted to defend against the charges had she known she could be denaturalized").

The dissent incorrectly concludes that today's opinion "announces a new right" to plea bargaining—a right that it suggests transforms "plea bargaining into an absolute entitlement." (Dissenting Op. at 11, 18) To the contrary, the constitutional right at issue in this case is not some newly minted right to plea bargaining: it is the long-recognized right to effective assistance of counsel. And the Supreme Court has told us that the right to effective assistance extends to the plea-bargaining process notwithstanding the fact that defendants have no constitutional right to a plea offer. In *Frye*, the Court rejected both the Government's claim that Frye "was not deprived of any legal benefit" because "there is no right to a plea offer or a plea bargain in any event," and its conclusion that "any wrongful or mistaken action of counsel with respect to earlier plea offers is beside the point." 566 U.S. at 142. Because our criminal justice system is effectively "a system of pleas, not a system of trials," the Court found it "insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process." *Id.* at 143–44 (quoting *Lafler*, 566 U.S. at 170). In the context of the right to effective assistance of counsel, *Lafler* concludes that it is the absence of a right to be offered a plea or to have it accepted that is beside the point. The Court found that true because "[m]uch the same reasoning guides cases that find criminal defendants have a right to effective assistance of counsel in direct appeals even though the Constitution does not require States to provide a system of appellate review at all." *Lafler*, 566 U.S. at 168 (citing *Evitts v. Lucey*, 469 U.S. 387 (1985)).

Today's decision no more announces a right to plea bargaining than *Frye* or *Lafler* announced such a right. In those cases, as in this one, the right at issue is the right to effective

assistance of counsel at all critical stages of the criminal process.  Of course, if the Government exercises its discretion not to bargain for a guilty plea, no constitutional question is presented. But when the Government chooses to enter into plea negotiations, the Constitution requires that defendants receive effective assistance in navigating that crucial process.  *See id.* ("[W]hen a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution." (quoting *Evitts*, 469 U.S. at 401)).  And where counsel's assistance falls short, as here, at issue is whether the defendant can show a reasonable probability that, with proper advice, the outcome of those negotiations would have been different.  The purpose of remand is to answer that narrow question in light of the facts of this case.

Finally, contrary to the Government's assertions in its supplemental brief, the lack of an obvious remedy (should Rodriguez-Penton satisfy *Strickland* on remand) does not automatically equate to a failure to show prejudice.  There is some analytical overlap between the two inquiries—if there were, in fact, no other options at the time of the guilty plea, then Rodriguez-Penton could not demonstrate a reasonable probability that the outcome would have been different absent trial counsel's deficient performance.  But what options were available to Rodriguez-Penton at the time of the plea is distinct from what options are available to the court in the present day.  Rodriguez-Penton has asserted that his decisionmaking process would have been different if he had been properly advised, and the Government has not offered any countervailing evidence that Rodriguez-Penton could not have secured a more favorable plea. Thus, it remains possible that, on remand, he will show a reasonable probability of a different outcome.

### III.  CONCLUSION

For the foregoing reasons, the district court's decision is hereby **REVERSED** and **REMANDED** for additional proceedings consistent with this opinion.

———————————

**DISSENT**

———————————

THAPAR, Circuit Judge, dissenting. Being a criminal defense attorney is not easy. You have to deal with the government, which often has the odds and resources stacked in its favor. You have to advise a client, who may not be willing to listen. Sometimes you may have to delve into law far afield from your day-to-day practice—like immigration law. And if you get that law wrong and a court says you were ineffective, you may face bar sanctions.

Here, a defense attorney with a Cuban client says he sought out assistance of immigration attorneys and advised his client that he probably would not be deported if he pled guilty. Even the Assistant United States Attorney agreed. But things changed, and his client may get deported. Now his client says he wishes he would have negotiated a better deal that took deportation off the table and claims that, but for his counsel's advice, he would have done so. The majority agrees and in the process announces a new right—the right to negotiate more (even though the government does not have to and has said it will not in this case).

Because this "right" is found neither in the Constitution nor the case law, I respectfully dissent.

I.

The facts here are simple: Daynel Rodriguez-Penton, a permanent resident who came to the United States from Cuba, pled guilty to conspiring to distribute oxycodone. He received a sentence of 121-months imprisonment, which was later reduced to 97 months. While both the district court and his defense attorney apparently alluded to deportation, neither specifically told Rodriguez-Penton that he could be deported as a result of his guilty plea. R. 78, Pg. ID 248 (district court observed that "the defendant's here on a green card," but "d[id]n't know if this conviction would result in deportation"); R. 128, Pg. ID 469 (defense counsel claimed he told Rodriguez-Penton that "since . . . he had emigrated from Cuba, I did not believe he would be deported"). Rodriguez-Penton claims that he first learned he was deportable when he arrived at prison. So he wanted out of his guilty plea. After an unsuccessful direct appeal in which he

charged the district court with failing to inform him of the risk of deportation, *United States v. Rodriguez-Penton*, 547 F. App'x 738, 740 (6th Cir. 2013), he filed this motion under 28 U.S.C. § 2255, claiming ineffective assistance of counsel under the Sixth Amendment.

An ineffective-assistance claim requires two showings: deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The district court assumed that Rodriguez-Penton's counsel's performance was deficient and proceeded to the prejudice inquiry.[1] But since Rodriguez-Penton claimed that, even with better advice, he would *not* have forgone a plea and thus would not have proceeded to trial, the district court concluded that he could not show prejudice. Rodriguez-Penton appeals that finding. He argues that, but for his counsel's immigration advice, he would have sought to negotiate a better plea offer that promised no deportation.

## II.

In recent years, the Supreme Court has decided several important cases defining the Sixth Amendment rights of criminal defendants who plead guilty. Under those decisions, a criminal defendant has a right to effective assistance in deciding whether to accept a plea offer. *Lafler v. Cooper*, 566 U.S. 156, 168 (2012); *Missouri v. Frye*, 566 U.S. 134, 147 (2012). If he declines the offer because of his lawyer's bad advice and ends up worse off after trial, he can show

---

[1]The district court did not make any factual findings as to deficiency. *See Padilla v. Kentucky*, 559 U.S. 356, 359, 368–69, 374 (2010) (holding that counsel rendered constitutionally deficient performance where he told his client that he "did not have to worry about immigration status since he had been in the country so long," even though the law was clear that he would be eligible to be deported). Since the district court will consider the case again on remand, I would leave the deficiency inquiry to the district court in the first instance, rather than find deficiency on our own. *See, e.g.*, *United States v. Williams*, 527 F. App'x 457, 460 (6th Cir. 2013) (declining to consider ineffective-assistance claim where "a variety of questions remain[ed] unresolved" and concluding that "[t]he judge who heard the testimony and reviewed the evidence is better suited to decide these issues"); *Bigelow v. Williams*, 367 F.3d 562, 576 (6th Cir. 2004). As the Supreme Court said in *Padilla*, "[i]mmigration law can be complex, and it is a legal specialty of its own." 559 U.S. at 369. When the law is not "succinct and straightforward," a criminal defense attorney must only advise his client that there may be a risk of "adverse immigration consequences." *Id.* And here, it appears that Rodriguez-Penton's counsel, the Assistant United States Attorney, and some "immigration attorneys" all believed that Rodriguez-Penton would *not* be deported. R. 128, Pg. ID 484, 506. At the time, that conclusion may have been reasonable. After all, defense attorneys are not expected to be psychic. And the United States did not normalize relations with Cuba until 2014, which likely changed both whether the United States was willing to deport Cuban nationals and whether Cuba was willing to accept them. These are all things that a district court would ordinarily determine before calling a defense attorney deficient. In light of these difficult issues, it is best left to the district court to decide whether counsel's advice rose to the level of being "unprofessional." *Padilla*, 559 U.S. at 366–67.

prejudice and the court can order the prosecutor to reoffer the plea. *Lafler*, 566 U.S. at 168, 171. The Court's decision in *Lee v. United States*, 137 S. Ct. 1958 (2017), stands for the flip side of the coin: if a defendant pleads guilty based on his lawyer's bad advice but would have gone to trial otherwise, then the defendant can show prejudice from the lost opportunity to go to trial. *Id.* at 1966–67.

Notwithstanding these decisions, the Supreme Court has never held that a criminal defendant has a right to try to bargain for a plea offer he never received. So what do we do when, as here, a defendant says he would have rolled the dice not at trial, but at more plea *negotiating*? Is a defendant who loses out on the opportunity at more negotiating therefore prejudiced because of it? Rodriguez-Penton thinks so. But neither the Constitution nor Supreme Court precedent supports his position.

III.

Central to this case is what to make of the Court's decision in *Lee*. *Lee* concerned a defendant who, but for bad advice about deportation consequences, would have *declined* a plea bargain and instead gone to trial—rather than seeking a better plea deal. *Id.* at 1966–67. In vindicating the defendant's lost opportunity to go to trial, *Lee* expressly left open the question that we must answer. *Id.* at 1966 n.2 (declining to reach the argument that Lee was prejudiced "because, had his attorney advised him that he would be deported if he accepted the Government's plea offer, he would have bargained for a plea deal that did not result in certain deportation"). Still, *Lee*'s tea leaves are the best guidance we have to go on.

One way to read *Lee* is the gambler's reading, which is to say that prejudice focuses solely on a defendant's lost opportunity to gamble. So long as a defendant who has pled guilty under bad advice says that good advice would have persuaded him to roll the dice—whether at trial or in attempting more plea negotiation—then that is prejudice. Certain portions of *Lee*, read in isolation, might support that reading. *Id.* at 1966–67 (characterizing the prejudice inquiry as "asking what an individual defendant would have done," in which case "the possibility of even a

highly improbable result may be pertinent to the extent it would have affected his decisionmaking").**2**

A more complete reading of *Lee*, however, eschews the sort of "categorical rule[]" that would treat trials and plea negotiations the same and accounts for the Court's repeated emphasis on a defendant's *right* to a trial. *Id.* at 1965–67, 1966 n.2. Where a defendant says that proper advice would have influenced him to go to trial, courts can say that improper advice denied him of a "proceeding" that the Sixth Amendment guarantees. *Id.* But the same is not true when a defendant says that improper advice denied him the chance at negotiating a better plea. A plea negotiation is not a "proceeding," and a defendant has no right to it. *Id.*; *see Weatherford v. Bursey*, 429 U.S. 545, 561 (1977) ("[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial."); *accord Frye*, 566 U.S. at 148 ("[A] defendant has no right to be offered a plea . . . ."). A reading of *Lee* that simply substitutes "plea negotiation" for "trial" in order to require a new chance to bargain ignores that trials are a matter of right, but plea negotiations are not.

In addition, even under the gambler's reading of *Lee*, a defendant still must show a "reasonable probability" that, but for counsel's bad advice, he would have received a chance to negotiate a better offer—something much more difficult in the plea-bargaining context. *Lee*, 137 S. Ct. at 1969 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Unless the judiciary can force the executive to negotiate—which, for reasons discussed below, it cannot—then a chance to negotiate is just that: a chance. It is just as (or more) likely that a defendant dead-set on avoiding trial would be forced to settle for the exact same offer he is trying to get out of or worse. It may never be reasonably *probable* (even if possible) that the government will sit down at the negotiating table, unless the government concedes as much. And according to Rodriguez-

---

**2**Several circuits have indicated that a defendant in Rodriguez-Penton's situation can show prejudice based on the possibility of negotiating a better plea offer. *United States v. Swaby*, 855 F.3d 233, 241–43 (4th Cir. 2017); *United States v. Rodriguez-Vega*, 797 F.3d 781, 788–89 (9th Cir. 2015); *DeBartolo v. United States*, 790 F.3d 775, 779 (7th Cir. 2015); *Kovacs v. United States*, 744 F.3d 44, 52–53 (2d Cir. 2014). These decisions predate *Lee* and thus lack the benefit of its insights. In addition, unlike Rodriguez-Penton, the defendants in those cases pointed to facts demonstrating that a plea offer removing the possibility of deportation was on the table (or could have been). *See, e.g.*, *Swaby*, 855 F.3d at 242–43; *Rodriguez-Vega*, 797 F.3d at 789; *DeBartolo*, 790 F.3d at 779–80; *Kovacs*, 744 F.3d at 53. Moreover, to the extent these cases conclude that a lost opportunity to negotiate a plea is prejudice under *Strickland*, none provides a constitutionally satisfactory answer why.

Penton, the government here told him in no uncertain terms that there would be no new negotiations. Appellant Suppl. Br. 11; *see also* Appellee Suppl. Br. 5 (stating that a plea without deportation is "not available to Rodriguez-Penton because he dealt in a large amount of oxycodone, so no non-deportable crime fits the facts of this case"). So if all a defendant can show is that he lost out on a possible chance to negotiate, that so-called prejudice cannot upset the "strong societal interest in finality" that applies with "special force" to guilty pleas. *Lee*, 137 S. Ct. at 1967 (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)).

The best reading of *Lee*, therefore, counsels against granting Rodriguez-Penton relief. *Weatherford*, 429 U.S. at 561; *see Frye*, 566 U.S. at 148; *see also Lee*, 137 S. Ct. at 1970 n.* (Thomas, J., dissenting) ("It is not enough for a defendant to show that he would have obtained a better plea agreement. A defendant has no right to be offered a plea, and this Court has never concluded that a defendant could show a 'reasonable probability' of a different result based on a purely hypothetical plea offer subject to absolute executive discretion." (internal citations, quotations marks, and alteration omitted)).

Understanding that *Lee* did not create a new right to plea bargaining, the majority claims that it is simply following *Lafler* and *Frye*. Majority Op. 9–10. But neither of those cases suggest a criminal defendant can prove prejudice from missing out on hypothetical plea offers. Indeed, the key in both *Lafler* and *Frye* was that there was a *previous* (more favorable) plea offer that the defendant rejected based on bad advice. *Lafler,* 566 U.S. at 161, 166; *Frye,* 566 U.S. at 148. In *Lafler,* the Court stated that "[i]f no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here simply does not arise." 566 U.S. at 168. And, in *Frye*, the Court held that to demonstrate prejudice, "defendants must demonstrate a reasonable probability they would have accepted the *earlier plea offer* had they been afforded effective assistance of counsel." 566 U.S. at 147 (emphasis added). Here, Rodriguez-Penton has no plea offer to which he can point; he simply was not offered a plea deal with a guarantee that he would not be deported. Thus, the majority's reliance on *Lafler* and *Frye* is misplaced.

IV.

Even if Rodriguez-Penton could show prejudice, the question of remedy would present a separate hurdle. All the possible remedies here share a common characteristic: they push the judiciary well outside of its proper role in criminal proceedings. Ordering a prosecutor to reoffer a plea that was *already* offered is problematic enough. *Lafler*, 566 U.S. at 183–84 (Scalia, J., dissenting); *id.* at 187–88 (Alito, J., dissenting); *Williams v. Jones*, 571 F.3d 1086, 1109–10 (10th Cir. 2009) (Gorsuch, J., dissenting) (explaining that this remedy "use[s] the rubric of ineffective assistance to upend the plea bargaining process, transforming it from its historic role as an act of executive discretion to one of judicially enforceable right"). Yet ordering the prosecutor to extend a plea offer that was *never* made is something well beyond the judiciary's powers. *See Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987) (observing that it is within a prosecutor's discretion to decide "whether to enter into plea bargains and the terms on which they will be established," and that such decisions "are all made outside the supervision of the court"). Rodriguez-Penton, to his credit, does not ask us to go that far. Instead, he proposes that we vacate his conviction and simply recommend that the prosecutor not recharge him.

But Rodriguez-Penton's proposed remedy fails to solve the problem it tries to address and creates a new problem along the way. First, the judicial branch has no business taking *any* position on the exercise of prosecutorial discretion, whether "recommended" or not. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("[T]he decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion."); *see* Fed. R. Crim. P. 11(c)(1) ("An attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement. The court *must not* participate in these discussions." (emphasis added)); *United States v. Ushery*, 785 F.3d 210, 219–21 (6th Cir. 2015). And recommending that the prosecutor take an action presents a new problem: the judiciary cannot render advisory rulings. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). The Constitution tells us that our job as judges is to resolve "Cases" and "Controversies" through enforceable remedies—not to write strongly-worded advice columns. U.S. Const. art. III; *see Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976) (observing that our jurisdiction

extends only to matters where it is "likely" that an injury will be redressed by a favorable decision). Thus, we have no power to provide the remedy Rodriguez-Penton seeks.

Rodriguez-Penton's proposed remedy also presents a practical problem. If the court vacates his conviction, the prosecutor may well reject the court's recommendation of clemency and adhere to Department of Justice policy that requires charging Rodriguez-Penton with "the most serious, readily provable offense"—likely that to which he already pled guilty in this case. Memorandum from the Office of the Att'y Gen. on Dep't Charging and Sentencing Policy 1 (May 10, 2017). The government could then insist on going to trial, and Rodriguez-Penton, who has already admitted his guilt, would likely lose. Even with credit for time served, Rodriguez-Penton could be sentenced to *more* time than under his initial plea and still face the possibility of deportation. Counsel asserts that Rodriguez-Penton has been made adequately aware of the possible risks here, but there is no reason to expand the Sixth Amendment by judicial fiat and push courts out of their constitutional role, only to watch Rodriguez-Penton lose a game with long odds.

Nor is the solution to remand to the district court with the hope that more evidence and more briefs will reveal a non-existent answer. *See* Majority Op. 9–10. Since courts have no power to provide the remedy Rodriguez-Penton seeks, remanding to the district court with instructions to sift through unavailable remedies is improper (not to mention unfair to the district court). *Williams*, 571 F.3d at 1108–09. Here, there is neither prejudice nor remedy. Today's decision leaves to the district court the unenviable task of inventing both.[3]

\* \* \*

The impact of today's decision could be wide-reaching. Rodriguez-Penton claims that he should have received better advice about deportation. But the decision today speaks more broadly than immigration consequences, potentially encompassing any deficient advice that

---

[3]I recognize that the district court, which did not have the benefit of *Lee*, relied solely on *Hill v. Lockhart* in reaching its decision. But the district court's reliance on *Hill* is no reason to reverse and remand in this case. *Hill* remains good law and provides the correct answer here, where the only prejudice Rodriguez-Penton can show is a lost opportunity to go to trial, which he has made clear he does not want. 474 U.S. at 59; *see Lee*, 137 S. Ct. at 1965–66, 1969 (applying *Hill*). And again, in addition to the absence of prejudice, there is no constitutionally available remedy the district court can provide.

"infected [a defendant's] decisionmaking process, and thus undermines confidence in the outcome of the plea process." Majority Op. 7. After today, any time an attorney fails to inform a defendant about *any* direct consequence of a plea agreement, a defendant may have a right to negotiate again. And so we should expect to see all manner of § 2255 motions by defendants claiming they got bad advice about their appellate waiver, or drug quantity, or applicable sentencing enhancements, or recommended sentencing range, to name a few. All will be admittedly guilty, but all will want their chance at a better deal. And every one of them will have been "prejudiced."

It is one thing to recognize that plea bargaining is a "critical phase" of modern criminal prosecutions. *Padilla*, 559 U.S. at 373. It is wholly another to transform plea bargaining into an absolute entitlement—defendant's satisfaction guaranteed. Since this entitlement is found neither in the Constitution nor the case law, I respectfully dissent.